**In re AIR CRASH OVER THE TAIWAN STRAITS ON MAY 25, 2002.**

**No. CV 03–3635 MMM (RNBx).**

United States District Court, C.D. California.

July 20, 2004.

Stuart R. Fraenkel, Esq., Gretchen M. Nelson, Esq., Kreindler & Kreindler LLP, Los Angeles, CA, Brian A. Alexander, Esq., Francis G. Fleming, Esq., Kreindler and Kreindler LLP, New York City, Michael Yin–Yam Lo, Michael Lo Law Offices, Alhambra, CA, Steven D. Archer, Esq., Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, CA, Bruce A. Finzen, Esq., Robins, Kaplan, Miller & Ciresi LLP, Washington, DC, John J. Veth, Esq., Douglas W. Schroeder, Esq., Speiser Krause, Irvine, CA, Charles Herrmann, Esq., Herrmann & Associates, Tacoma, WA, for Plaintiffs.

Frank A. Silane, Esq., Richard A. Lazenby, Esq., Condon & Forsyth LLP, Los Angeles, CA, for China Airlines.

Ronald A. McIntire, Esq., Melora M. Garrison, Esq., Perkins Coie LLP, Santa Monica, CA, Thomas J. McLaughlin, Esq., Adam N. Steinman, Esq., Perkins Coie LLP, Seattle, WA, for The Boeing Company.

**1.** See Declaration of Yen L. Lee ("Lee Decl."), ¶ 12. The flight was not scheduled to continue to the United States or to have any contact with the United States. *Id.,* ¶ 13.

**2.** See Boeing's Motion to Dismiss on *Forum Non Conveniens* Grounds ("Boeing Mot.") at 3; Plaintiffs' Memorandum of Points and Authorities In Support of Joint Motion To Dismiss on Grounds of *Forum Non Conveniens* ("Pls'.Opp.") at 3.

**3.** Boeing Mot. at 3; Pls'. Opp. at 1.

**4.** Heirs of 124 decedents currently have actions pending before the court. Plaintiffs assert, and defendants appear to concede, that three of these cases are governed by Article 28 of the Warsaw Convention, and thus are not subject to dismissal on *forum non conveniens* grounds. See Convention for the Unification of Certain Rules Relating to International Transportation by Air (the "Warsaw Convention"), Oct. 12, 1929, 49 Stat. 3000, 3020–21, T.S. No. 876 (1934), note following

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ON FORUM *NON CONVENIENS* GROUNDS

MORROW, District Judge.

On May 25, 2002, China Airlines flight CI611 crashed while en route from Taipei, Taiwan, to Hong Kong, resulting in the death of all 225 persons aboard. Heirs of 124 of the decedents have filed actions pending in this court against defendants Boeing Company and China Airlines. Both defendants move to dismiss all but three of these actions on *forum non conveniens* grounds.

### I. FACTUAL BACKGROUND

On May 25, 2002, China Airlines flight CI611, a regularly scheduled flight from Taipei, Taiwan to Hong Kong, China,[1] crashed into Taiwanese waters.[2] All 225 persons on board died in the crash.[3] Heirs of 121 of the decedents filed actions that are pending in this court, and that are the subject of defendants' motion to dismiss.[4] Of these decedents, 111 were Taiwanese.[5]

49 U.S.C. § 40105; see also *Hosaka v. United Airlines, Inc.,* 305 F.3d 989, 1004 (9th Cir. 2002) (stating that "Article 28(1) of the Warsaw Convention precludes a federal court from dismissing an action on the ground of *forum non conveniens* "). In their opposition to defendants' motion, plaintiffs note that one other plaintiff contends the Warsaw Convention is applicable to his case. (See Pls'. Mot. at 10, n. 8.)

**5.** See Declaration of Melora M. Garrison ("Garrison Decl."), ¶ 2. Based on discovery conducted to date, Garrison is informed and believes that, of the 111 Taiwanese decedents, one was a national of both Taiwan and Canada, resident in Taiwan, while another held both Taiwanese and United States citizenship, but resided in Taiwan and worked for a Taiwanese employer. (*Id.*) Of the non-Taiwanese decedents, four were citizens of the People's Republic of China (three of whom resided in Taiwan at the time of the accident); three were from Hong Kong; one was a citizen of Singapore who lived in Hong Kong; one was

The aircraft involved in the accident was a Boeing 747–200 aircraft, registration B18255.[6] China Airlines, a Taiwanese corporation,[7] purchased the aircraft from defendant Boeing Company in 1979.[8] Plaintiffs' complaints state claims against Boeing and China Airlines for, *inter alia,* wrongful death, negligence, and strict products liability.[9] Both defendants seek dismissal on *forum non conveniens* grounds. They contend that Taiwan is an available and adequate forum, and that the balance of public and private interests weighs in favor of having the action tried in the Taiwan courts.

## II. DISCUSSION

### A. Legal Standard Governing Forum *Non Conveniens* Dismissals

■] "[T]he standard to be applied [to a motion to dismiss on forum *non conveniens* grounds] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent...." *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir.1983). Applying this standard, courts treat "forum *non conveniens* as an exceptional tool to be employed sparingly," and should not "perceive it as a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir.

2000), cert. denied, 531 U.S. 1112, 121 S.Ct. 857, 148 L.Ed.2d 771 (2001).

■] To obtain dismissal on forum *non conveniens* grounds, a defendant must demonstrate that an adequate alternative forum exists, and that private and public interest factors favor trial there. See *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1143 (9th Cir.2001); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 499 n. 22 (9th Cir.2000).

■] Relevant "private interests" include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for unwilling witnesses; (3) the comparative cost of obtaining willing witnesses; (4) the possibility of a view of any affected premises; (5) the ability to enforce any judgment eventually obtained; (6) and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), superseded by statute on other grounds as recognized in *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.,* 725 F.Supp. 317 (S.D.Miss.1989); see also *Rosa, supra,* 211 F.3d at 512; *Nebenzahl v. Credit Suisse,* 705 F.2d 1139, 1140 (9th Cir.1983).

■ "Public interest factors," by contrast, include: (1) court congestion; (2) the

---

Swiss; and one was a United States citizen. (*Id.*)

6. Lee Decl., ¶ 9.

7. See Lee Decl., ¶¶ 4–5 ("CAL is a commercial airline engaged in the international transportation of passengers and cargo by air. It is a corporation organized and existing under the laws of the Republic of China ("ROC") in Taiwan.... CAL's corporate headquarters and its principal place of business are in Taipei, Taiwan. CAL's officers and directors

are all citizens and residents of the ROC and all maintain their offices in Taiwan").

8. *Id.,* ¶ 10.

9. See generally Complaint of Issac Hung ("Complaint"). Plaintiffs note that the wrongful death actions against both defendants state claims for design and manufacturing defects, failure to warn, warranty claims, and improper maintenance and repair. (See Pls'. Opp. at 1.)

unfairness of burdening citizens in an unrelated forum with jury duty; (3) the interest in having localized controversies decided at home; (4) the interest in trying the case in a forum familiar with the applicable law; and (5) the interest in avoiding unnecessary conflicts of laws. *Gilbert, supra*, 330 U.S. at 508–09, 67 S.Ct. 839; *Rosa, supra*, 211 F.3d at 512. Defendant bears the burden of showing, in light of these factors, that "exceptional circumstances" warrant dismissal on forum *non conveniens* grounds. See *Ioannidis/Riga v. M/V Sea Concert*, 132 F.Supp.2d 847, 861 (D.Or.2001); *Magellan Real Estate, Investment Trust v. Losch*, 109 F.Supp.2d 1144, 1148 (D.Ariz.2000). Ultimately, the determination is one that is committed to the sound discretion of the district court. *Lueck, supra*, 236 F.3d at 1143.

### 1. Whether Taiwan Is An Adequate Forum

 To demonstrate that Taiwan is an adequate forum, defendants must show that "(1) they are amenable to process [there], and (2) [that] the subject matter of the lawsuit is cognizable [there] so as to provide plaintiff appropriate redress." *Bodner v. Banque Paribas*, 114 F.Supp.2d 117, 132 (E.D.N.Y.2000); see also *Piper, supra*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *AAR International, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 524 (7th Cir.

2001) ("The court must first determine that an adequate alternative forum is available to hear the case, meaning that all parties are within the jurisdiction of the alternative forum and amenable to process there, and that the parties would not be treated unfairly or deprived of all remedies if the case were litigated in the alternative forum"); *Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534, 539 (S.D.N.Y.2001) ("The requirement of an adequate alternative forum 'ordinarily ... will be satisfied when the defendant is "amenable to process" in the other jurisdiction' "), aff'd. as modified, 303 F.3d 470 (2d Cir.2002).[10]

### a. Defendants Are Subject To The Jurisdiction Of The Taiwan Courts And Amenable To Process There

The parties do not dispute that Taiwan courts will be able to assert personal jurisdiction over China Airlines, and China Airlines has stated that it is amenable to process in Taiwan.[11] This satisfies the first prong of the adequate alternative forum test as respects China Airlines. See *Aguinda, supra*, 142 F.Supp.2d at 539.

 Boeing has stated that it will accept service of process and submit to the jurisdiction of the Taiwanese courts.[12] Plaintiffs nonetheless contend "there are serious questions as to whether jurisdiction

10. Plaintiffs initially argue that defendants' motion should be denied because certain plaintiffs have asserted claims under the Warsaw Convention that cannot be dismissed on *forum non* grounds. (See Pls'. Opp. at 10.) The court addresses this argument in evaluating the applicable private interest factors. See *infra* at 51–52.

11. See Declaration of Professor Tsung–Fu Chen ("Chen Decl."), ¶ 8 ("I am informed and believe that China Airlines' principal office and principal place of business is Taiwan. It is my opinion to a reasonable legal probability that Taiwan Code of Civil Procedure, Article 2, Paragraph 2 gives the Taiwan courts per-

sonal jurisdiction over China Airlines in these cases"); see also Memorandum of Points And Authorities In Support of China Airlines Ltd.'s Motion To Dismiss On The Grounds of *Forum Non Conveniens* ("China Airlines Mot.") at 8 (noting that both defendants "have agreed to submit to the jurisdiction of the courts of Taiwan").

12. See Garrison Decl., ¶ 5 ("Boeing is willing to submit, as a condition of dismissal of these actions, to personal jurisdiction in Taiwan, and to toll any applicable statute of limitations for 120 days after dismissal by this court").

would exist" over claims asserted against Boeing. Specifically, they note that Boeing is not authorized to do business in Taiwan; that it does not have a principal place of business in Taiwan; that the crash occurred outside Taiwan's territorial waters; and that they allege product liability claims arising from conduct that occurred in the United States.[13]

In response, defendants submit declarations and deposition testimony indicating that Taiwanese courts have jurisdiction over claims if they have either subject matter jurisdiction over the claim or personal jurisdiction over the defendant.[14]

They also proffer evidence that, as respects plaintiffs' claims against Boeing, Taiwanese courts may have both types of jurisdiction. Defendants cite the deposition testimony of plaintiffs' experts, both of whom state that under Article 25 of Taiwan's Code of Civil Procedure, Taiwanese courts will accept a defendant's consent to jurisdiction.[15] Boeing has represented that it will consent to the jurisdiction of a Taiwan court if these actions are dismissed on *forum non conveniens* grounds.[16] Additionally, defendants adduce evidence that the crash of flight CI611 occurred in Taiwanese territorial waters.[17] Because Tai-

---

13. Pls'. Opp. at 15; see also Chen Decl., ¶¶ 16–18.

14. See Chen Depo. at 37:17–22 ("Q: Okay. And in order for the court to assert jurisdiction over a defendant, the court has to find either personal jurisdiction or subject matter jurisdiction, not both? A: Either one").

15. See Reply of Defendant The Boeing Company In Support Of Motion To Dismiss On The Grounds Of *Forum Non Conveniens* ("Boeing Reply"), Supplemental Declaration of Melora M. Garrison ("Supp. Garrison Decl."), ¶ 2, Ex. A (Deposition Testimony of Tsung–Fu Chen ("Chen Depo.")), at 65:1–9 (Q: So just for the record, Article 25 reads in this English translation, quote, 'When the defendant does not attack the incompetency of the court and proceeds orally in the case, the court shall be deemed to be competent.' So under Article 25 of the Code of Civil Procedure, Boeing can consent to jurisdiction in the courts of Taiwan. Correct? A: Yes); see also Supp. Garrison Decl., ¶ 3, Ex. B (Deposition Testimony of Shing–Ger Lin ("Lin Depo.")) at 18:9–14 ("Q: Okay. So you would translate [Article 25] as follows . . . 'When the defendant does not attack the lack of jurisdiction of the court and proceeds orally in the case, the court shall be deemed to have jurisdiction? A: Yes. That would be more correct"); see also Declaration of Sheng–Lin Jan In Support of Boeing's Motion To Dismiss On *Forum Non Conveniens* Grounds ("Jan Decl."), ¶ 12 ("[u]nder Taiwan law, parties may also consent to proceed before a particular court in Taiwan").

16. See Garrison Decl. at ¶ 5.

17. See Declaration of Professor Nien–Tsu Alfred Hu In Support of Boeing's Motion To Dismiss on *Forum Non Conveniens* Grounds ("Hu Decl."), ¶ 11 (stating that ("the entire area, or crash site, depicted in the Factual Report Wreckage Map, including the radar track and main wreckage area, falls within the outer limits of [Republic of China] territorial sea")). Plaintiff's expert, Professor Tsung–Fu Chen, initially submitted a declaration stating that the crash occurred outside Taiwan's territorial waters because he believed that those waters extended twelve miles from the shore line. (See Chen Decl., ¶¶ 11, 18 ("It is my opinion to a reasonable legal probability that the crash of Flight CI611 occurred in international waters")). In his deposition, however, Chen acknowledged that under Taiwanese law, the line of demarcation was likely the *baseline*, not the *shore line*, as defined by Taiwanese law. (Chen Depo at 61:5–15 ("Q: Okay. So the Taiwanese territorial waters are defined by 12 nautical miles from that red line, that baseline. Correct? A: Yes. Q: It's not 12 nautical miles from the shore of any island or any other body of land. Correct? A: And this red line, if this map is correct from the website of the Ministry, yeah, this is including the Penghu Islands. Yes")). As explained in Professor Hu's declaration, when this point of demarcation is used, the crash occurred within Taiwan's territorial waters. (See Hu Decl., ¶ 13 ("In paragraph 11 of the Chen Declaration, both the official English title of the ROC Territorial Sea Law and the definition of territorial sea were wrongly presented. . . . [The Territorial Sea Law provides] that the breadth of territorial sea is

wanese courts have subject matter jurisdiction over an action if either a wrongful act occurred in Taiwan or such an act caused a result in Taiwan,[18] it appears that the Taiwanese courts would have subject matter jurisdiction over claims against Boeing arising out of the crash.[19] Finally, defendants proffer evidence that Taiwanese courts can assert subject matter jurisdiction over claims that a defendant's acts caused or contributed to damage to Taiwanese plaintiffs in Taiwan.[20] This evidence, coupled with the fact that China Airlines is subject to personal jurisdiction in Taiwan because it is a resident, suffices to satisfy the first prong of the adequate alternative forum test. See *Aguinda, supra*, 142 F.Supp.2d at 539.

### b. Whether Plaintiffs' Claims Are Cognizable In Taiwan

To demonstrate that plaintiffs' claims are cognizable in Taiwan's courts, such that those courts can afford appropriate redress, defendants must establish that Taiwan permits litigation of the subject matter of the dispute, that it provides adequate procedural safeguards, and that the remedy available there is not so inadequate as to amount to no remedy at all. See *Piper, supra*, 454 U.S. at 255 n. 22, 102 S.Ct. 252 ("dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute"); *Lueck, supra*, 236 F.3d at 1143 ("The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate.... However, it is only in 'rare circumstances ... where the remedy provided by the alternative forum ... is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met," quoting *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991)); *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993) ("Even where the defendant is amenable to process in the alternative forum, however, there may be 'rare circumstances' in which the 'remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all,'" quoting *Piper, supra*, 454 U.S. at 254 n. 10, 102 S.Ct. 252).

established by up to a limit not exceeding twelve (12) nautical miles from baselines determined by [Taiwanese law]. The ROC territorial sea is not measured from the 'shore line' as perceived and presented in the Chen Declaration at paragraphs 11 and 17")).

**18.** See Jan Decl., ¶ 11 (noting that "Taiwan courts would treat the causes of actions against Boeing as based on tort," and that, "[g]iven that the location of the tortious act includes the location where the damage results, and that the crash of China Airlines Flight 611 occurred over Taiwan's territorial waters, the civil action against the wrongdoing falls in the jurisdiction of a Taiwan court").

**19.** See Hu Decl., ¶ 11 (noting that "[t]he sovereignty enjoyed by the ROC in its territorial

sea renders jurisdiction to the ROC over this case"); see also Chen Decl., ¶ 17 (stating that "[i]f the crash of Flight CI611 occurred over Taiwan's territorial waters ... then the Taiwan courts may have subject matter jurisdiction over Boeing").

**20.** See, e.g., Chen Depo. at 38:2–5 ("Q: But if Boeing committed ... a wrongful act in Taiwan which caused or contributed to damage to Taiwanese citizens, then there would be a basis for subject matter jurisdiction? A: Yes"); *id.* at 40:13–21 (Q: Is there a basis for subject matter jurisdiction if a person or company commits a wrongful act outside of Taiwan ... but it causes injury inside of Taiwan? A: So [sic] injury? Q: Yes. Is that a basis for subject matter jurisdiction? A: Yes").

### (i.) Taiwan Permits Litigation Of The Subject Matter Of The Claims And Provides An Adequate Remedy

Defendants have submitted declarations showing that Taiwan permits litigation of the subject matter of plaintiffs' claims, which sound in tort.[21] Taiwan is a civil law jurisdiction, and the causes of action available to plaintiffs are based on Taiwan's Civil Code, Civil Aviation Act, and other relevant laws and regulations.[22] Plaintiffs may assert claims against both China Airlines and Boeing under Article 184 of the Civil Code, which provides a cause of action for the negligent or wrongful act of a defendant.[23] They may also pursue claims against China Airlines under the Civil Aviation Act, which renders China Airlines strictly liable for death or injury to a passenger.[24]

If plaintiffs prevailed on these claims, they would have various remedies available to them. Defendants' experts opine that plaintiffs could recover both pecuniary and non-pecuniary damages under Taiwan's Civil Code. Specifically, a defendant responsible for the wrongful death of another is liable for medical expenses, funeral expenses, and any support and maintenance the decedent was legally obligated to provide to a third party.[25] Non-pecuniary damages, including damages for mental suffering, are also available.[26] Declarations such as those defendants have proffered are generally considered sufficient evidence of the adequacy of an alternative forum's law and remedies. See *Mercier v. Sheraton International, Inc.*, 981 F.2d 1345, 1352 (1st Cir.1992) (citing *Lockman Foundation, supra*, 930 F.2d at 768, for the proposition that "moving party may demonstrate [the] adequacy of [the] alternative forum's law through [the] affidavits and declarations of experts").

Plaintiffs contend that the products liability claims asserted against Boeing are not available in Taiwan, and defendants appear to concede the point.[27] Defendants

---

**21.** Whether Taiwan permits litigation of the subject matter of plaintiffs' claims and provides an adequate remedy intersects, in part, with whether Taiwanese law applies. The court discusses the relevant choice of law analysis at 43–50, *infra*.

**22.** See Jan Decl., ¶ 16.

**23.** See Decl. of Ta–Kai Shao ("Shao Decl."), ¶ 17; see also Chen Depo. at 33:21–25, 34:1–25 (Q: If we assume that there was either personal jurisdiction or subject matter jurisdiction over Boeing in Taiwan, they could be held liable for damages resulting from a tortious act, a wrongful act which resulted in the deaths of the passengers to China Airlines Flight 611.... A: If Boeing had done something wrong. That is if Boeing was negligent, doing something, for instance, maintaining the aircraft or something, I don't know. Then the family members of the crash [are] allowed to sue Boeing. Yeah. Q: Okay. And would they be able to sue them under the same section of the Civil Code that applied to China Airlines relating to the commission of a wrongful act resulting in damage? A: Yeah.

Based on the Civil Code rather than the Aviation Code, Aviation Act").

**24.** See Shao Decl., ¶ 19.

**25.** See Shao Decl., ¶ 20; Jan Decl., ¶ 18. Plaintiffs do not dispute this contention.

**26.** Shao Decl., ¶¶ 21–22 (noting, with respect to non-pecuniary loss, that "the court has the sole discretion to award the quantum of damage considering the social status, the financial capability of both parties and other elements"). Plaintiffs' expert agrees. (See Chen Decl., ¶ 42 ("I agree with those portions of the Declarations of Prof. Jan and China Airlines' Attorney Shao wherein they discuss those Articles of the Taiwan Civil Code which provide for the recovery of non-pecuniary damages for indirect victims (i.e., the survivors of the victims) of the crash of Flight CI611")).

**27.** See Pls'. Opp. at 15 ("Jurisdiction is also lacking as to Boeing insofar as plaintiffs assert product liability claims arising from conduct occurring in the U.S."); Chen Decl., ¶ 17 ("[t]o the extent that the acts supporting the products liability theory against Boeing oc-

assert, however, that the lack of such a remedy is not determinative. The court agrees. In *Piper, supra,* the Supreme Court noted that plaintiffs' inability to assert a strict liability claim in the foreign forum did not deprive them of a remedy: "[a]lthough the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly." *Piper, supra,* 454 U.S. at 255, 102 S.Ct. 252; see also *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 381 (5th Cir.2002) (noting that in *Piper,* "the Supreme Court held that Scotland's failure to recognize strict liability did not render Scotland an inadequate alternative forum," and concluding that "[t]here is no basis to distinguish the absence of a strict products liability cause of action under Mexican law from that of Scotland. *Piper Aircraft* therefore controls [, and] we hold that the failure of Mexican law to allow for strict liability on

the facts of this case does not render Mexico an inadequate forum"); *In re Bridgestone/Firestone, Inc.,* 190 F.Supp.2d 1125, 1132–33 (S.D.Ind.2002) ("[t]he absence of strict liability does not render a foreign court inadequate"); *Warn v. M/Y Maridome,* 961 F.Supp. 1357, 1376 (S.D.Cal.1997) ("[t]he unavailability of strict products liability does not make the Greek courts an inadequate forum"); see generally *Lueck, supra,* 236 F.3d at 1143–45 (holding that New Zealand was an adequate forum, despite the fact that plaintiffs could not maintain their tort claims there, because New Zealand's no-fault accident compensation scheme offered a remedy for plaintiffs' losses).[28]

Plaintiffs also contend that Taiwan provides no remedy for plaintiffs asserting multiple generation claims.[29] Specifically, they assert that the Taiwan Civil Code "provide[s] no remedy for the deaths of grandchildren and grandparents."[30] In their depositions, however, plaintiffs' experts conceded that multiple generation plaintiffs would likely have some cause of action should the case proceed in Taiwan.[31]

---

curred outside of Taiwan ... the Taiwan courts would not have subject matter jurisdiction over Boeing in these cases"); see also Boeing Mot. at 10, n. 8 ("Taiwan does not recognize a claim for strict products liability against manufacturers"). This argument appears to be inconsistent with plaintiffs' later argument that "[p]laintiffs have alleged that Boeing designed, manufactured and distributed a dangerous product, negligently provided services relating to it, and failed to warn of the dangers. While the [Consumer Protection Law] provides a strict liability remedy in these circumstances, it also allows a plaintiff to claim punitive double damages upon proof of a defendant's negligence, and treble damages upon proof of defendant's willful misconduct." (See Plaintiffs' Response to Defendants' Replies Re: Motions To Dismiss On Grounds of Forum Non Conveniens [Addressing The Effect Of Defendants' Proposed Stipulations, Per Court's Order of May 14, 2004] ("Pls'.Response") at 11–12.) Because, however, defendants concede that no products liability remedy is available in Taiwan, the court assumes for purposes of this analysis that such a remedy is in fact unavailable.

**28.** The force of plaintiffs' argument on this point, moreover, is diminished given the court's tentative conclusion that Taiwan law would likely apply even if the actions were litigated in this forum. See 43–50, *infra.*

Plaintiffs also contend that Taiwan is not an adequate forum because plaintiffs will have no remedy at all against Boeing if it is not amenable to jurisdiction in Taiwan courts (see Pls'. Opp. at 16 ("Taiwan is not an 'adequate alternative forum' because it offers ... possibly no remedy at all against Boeing for all of the plaintiffs")). This argument is answered by defendants' jurisdictional evidence discussed *supra.*

**29.** See Pls'. Opp. at 17 (stating that multiple generation claims include "claims asserted by the heirs of children and grandchildren, and grandparents").

**30.** *Id.;* see also Chen Decl., ¶¶ 42–45.

**31.** See Chen Depo. at 69:5–24 ("Q:.... Do the grandparents have a claim for their grandchild's death if the parents of the child

Based on the evidence submitted, and bearing in mind the Ninth Circuit's admonition that it will be the rare case in which "the remedy provided by the alternative forum ... is so clearly inadequate or unsatisfactory[ ] that it is no remedy at all" (*Lueck, supra,* 236 F.3d at 1143), the court concludes that defendants have demonstrated that Taiwan will permit litigation of plaintiffs' claims and provide an adequate remedy for them.[32]

### (ii.) Taiwan Provides Adequate Procedural Safeguards

 To establish that Taiwan is an adequate forum, defendants must also show that it affords procedural safeguards to litigants. Defendants have proffered declarations stating that Taiwan courts have the power to compel witnesses to testify and give evidence;[33] to take evidence from expert witnesses and order their own investigation of the case;[34] and to compel the parties to produce documents for the court's consideration.[35] Parties may request that the court compel the production of evidence,[36] and if a party is dissatisfied with the judgment of the trial court, he or she has the right to an appeal.[37] Defendant's experts opine that Taiwanese law does not expressly prohibit contingency fee contracts,[38] and note that under Taiwan's Code of Civil Procedure, a plaintiff may petition for temporary exemption from filing fees.[39]

Plaintiffs counter that the procedural safeguards available in Taiwan are inadequate. They concede that Taiwanese courts afford parties relief from filing fees in certain cases.[40] They contend, however, that the Taiwan Civil Code does not permit the retention of counsel on a true contingent fee basis.[41] Specifically, plain-

---

had predeceased the child? A: ... [I]f the grandparents pay medical expenses—Q: Okay. If they paid some medical expenses, the child—A:—or funeral—Q: Okay. A:—funeral fees. Anyone who pays funeral fees has a claim"); Lin Depo. at 31:11–14 (Q: And if the grandparents paid the funeral expenses for their granddaughter, they would have a claim? A: That would fall under *192*). Plaintiffs' expert Lin testified that grandparents could potentially recover additional damages under Taiwan's law of succession. (See Lin Depo. at 32:16–25, 33:1–2 ("Q: Under the law of succession in Taiwan, do the grandparents have a right to succession relative to the granddaughter if the parents are no longer alive and the granddaughter has no children of her own? A: Grandparents, yes.... Both of the parents have died in your example, but does the granddaughter have any siblings? Q: No. A: And then that would make the grandparents. Yes. Q: Okay. Thank you very much. What article is that that you're referring to? A: Civil Code 1138")).

32. Defendants contend plaintiffs' argument regarding multiple generation plaintiffs is a "red herring" because Taiwanese law would apply even if the case were to remain in this court. (See Reply Memorandum Of Points And Authorities In Support of Motion To Dismiss On The Grounds of *Forum Non Conve-*

*niens* ("China Airlines Reply") at 9; Boeing Reply at 5.) The court agrees with defendants that Taiwan law would likely apply even if the action were tried in this forum. (See 43–50, *infra*.) This provides additional support for the court's conclusion that the limited remedies available to multiple generation plaintiffs under Taiwan law do not render Taiwan an inadequate forum.

33. Shao Decl., ¶ 24.

34. *Id.*

35. *Id.,* ¶ 25.

36. *Id.,* ¶ 26.

37. *Id.,* ¶ 9.

38. *Id.,* ¶ 27.

39. Jan Decl., ¶ 13.

40. See Chen Decl., ¶ 20 ("[i]n order for a plaintiff to receive any such procedural relief of these fees and costs they would have to prove that they were totally 'devoid of means to pay the ... fee' ").

41. *Id.,* ¶¶ 23–25.

tiffs assert that Taiwan's Ethical Norms for Attorneys allow only for the *deferral* of unpaid attorneys' fees, and that there is no provision for fees that are contingent upon the outcome of the proceedings. As a consequence, they maintain, plaintiffs will remain responsible for the payment of agreed-upon attorneys' fees. Should plaintiffs fail to prove their claims, moreover, they may be held personally liable for defendants' litigation costs.[42] Plaintiffs contend that these requirements will impede their ability to proceed in Taiwan.

Plaintiffs also note that while Taiwan courts have the power to subpoena witnesses and compel limited discovery during trial,[43] parties "in actions such as these which are prosecuted in the Taiwan courts do not have the right or ability to conduct *any* pre-trial discovery."[44] Specifically, they contend, parties do not have the right to propound interrogatories, requests for admission, or document requests, nor to take pretrial depositions.[45]

Plaintiffs' arguments regarding the availability of contingency fee contracts and pretrial discovery, as well as their concerns regarding filing fees, do not warrant a finding that Taiwan's procedural safeguards are inadequate for *forum non conveniens* purposes. See *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir.2001) ("The plaintiffs' concerns about Argentine filing fees, the lack of discovery in Argentine courts, and their fear of delays in the Argentine courts do not render Argentina an inadequate forum. '[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate,'" quoting *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 829

(2d Cir.1990)); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir.1996) ("Magnin also points out, almost in passing, that if the case is tried in France he will not receive a jury trial, nor will he be able to obtain counsel through a contingency fee arrangement, because such fee arrangements are not permitted in France. As cherished as trial by jury is in our law, and as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, Magnin has not cited us to any Supreme Court or court of appeals decision giving such considerations substantial weight in *forum non conveniens* analysis. The argument is particularly weak in regard to contingency fees. In *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir.1987), the Fifth Circuit held that the ban against contingency fees in England should not significantly influence the *forum non conveniens* determination"); *Cheng, supra,* 708 F.2d at 1411 (affirming the district court's conclusion that Taiwan was an adequate forum and, in particular, the court's findings that "a Taiwan court would have jurisdiction over these cases; that the requirement of a filing fee, although a burden, was not sufficient to deny plaintiffs access to a Taiwanese court, particularly since they did not show that the burden was oppressive; and that Taiwan courts were fully competent to decide questions of American law, assuming American law to apply"); *Pavlov v. Bank of New York Co., Inc.*, 135 F.Supp.2d 426, 434–35 (S.D.N.Y.2001) (noting that "plaintiffs complain that Russian civil procedure does not provide for 'meaningful' pretrial discovery," and stating that "the requirement of an adequate alternative forum requires only that some remedy exist there, not that it be equivalent to that available here.

---

42. *Id.,* ¶¶ 24–25.

43. *Id.,* ¶¶ 27, 30.

44. *Id.,* ¶ 29.

45. *Id.*

In consequence, the unavailability of pre-trial discovery—a characteristic that Russian civil procedure, as one of plaintiffs' experts admits, shares with 'many civil code jurisdictions'—does not render the forum inadequate"), vacated on other grounds, 25 Fed.Appx. 70, 2002 WL 63576 (2d Cir.2002); *Marra v. Papandreou*, 59 F.Supp.2d 65, 73–74 (D.D.C.1999) (stating that "[a] foreign forum is not inadequate because of asserted deficiencies in its discovery rules generally or its documentary discovery rules in particular. Nor is a foreign forum rendered inadequate because it offers little or no opportunity for depositions," and further noting that "[f]ederal courts around the country overwhelmingly agree that a foreign forum's restrictive discovery or procedural rules do not render that forum inadequate"); *Stewart v. Adidas A.G.*, No. 96 Civ. 6670(DLC), 1997 WL 218431, *8 (S.D.N.Y. Apr. 30, 1997) ("the Second Circuit has specifically noted that the unavailability of contingency fee arrangements in an alternative forum may not be sufficient to preclude dismissal on *forum non conveniens* grounds"); *Kristoff v. Otis Elevator Co.*, No. CIV. A. 96–4123, 1997 WL 67797, *2 (E.D.Pa. Feb. 14, 1997) ("The majority of courts reviewing plaintiff's ability to litigate in the foreign forum consider the absence of a contingency fee arrangement one of the balancing factors in a *forum non conveniens* analysis, not an argument against availability of an alternative forum").[46]

### (iii) Conclusion Regarding Adequacy Of Forum

Because defendants have established that plaintiffs may pursued claims under Taiwanese law for the wrongful death of their relatives, and that adequate remedies and procedural safeguards exist in that forum, they have sufficiently demonstrated the adequacy of Taiwan as an alternative available forum. Plaintiffs' concerns that they will be unable to find lawyers willing to represent them on a contingent fee basis, and that they will be denied pretrial discovery, are relevant to the second element of the *forum non conveniens* test—i.e., whether public and private interests favor dismissal, and will be discussed *infra*. See *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292 (2d Cir.1996)

46. See also *Potomac Capital Investment Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V.*, No. 97 Civ. 8141(AJP)(RLC), 1998 WL 92416, * 5 (S.D.N.Y. Mar. 4, 1998) ("were a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered 'adequate'—and that is not the law"); *Doe v. Hyland Therapeutics Div.*, 807 F.Supp. 1117, 1124 (S.D.N.Y.1992) (concluding that "denying dismissal due to the more limited nature of Irish discovery procedures, as plaintiffs suggest, would lead precisely to the 'practical problems' foreseen by the Supreme Court in Piper.... Because of the extensive nature of American discovery, many instances would arise where dismissal, though appropriate from the perspective of convenience, could be precluded because the alternate forum did not offer comparable procedures.... In short, given the clear direction of the precedents on this issue, this Court will not deny dismissal on the basis that Ireland represents an unsuitable forum to vindicate plaintiffs' claims"); *Nai–Chao v. Boeing Co.*, 555 F.Supp. 9, 16 (C.D.Cal.1982) ("the plaintiffs here have not asserted that the filing fee requirement would make it impossible for them to prosecute this action in China, or even that the fee would be a serious hardship to them. Moreover, as Dr. Chen points out in his affidavit, under Chinese law the prevailing party may by court judgment recover the court costs from the losing party. Finally, the Court notes that the utilization of a filing fee is simply the method chosen by the Taiwanese government to finance its court system, and it seems fundamentally unfair to compel United States' citizens to 'subsidize' an action which should have been brought in another forum, at least, where as here, the plaintiffs have not even attempted to argue that the requirements of the foreign judicial system constitute a serious obstacle").

("There is a division of authority on whether financial hardships facing a plaintiff in an alternative forum as a result of the absence of contingent fee arrangements may cause a forum to be deemed unavailable. The majority of courts deem a plaintiff's financial hardships resulting from the absence of contingent fee arrangements to be only one factor to be weighed in determining the balance of convenience after the court determines that an alternative forum is available. We agree with the majority rule" (internal citations omitted)); *Reid–Walen v. Hansen,* 933 F.2d 1390, 1398 (8th Cir.1991) ("As part of the *Gilbert* private interest analysis, courts must be sensitive to the practical problems likely to be encountered by plaintiffs in litigating their claim, especially when the alternative forum is in a foreign country. The district court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum" (internal citations and quotations omitted)); *MTS Securities, Inc. v. Creditanstalt–Bankverein,* No. 96–CV–0567E, 1997 WL 251482, *5 (W.D.N.Y. May 1, 1997) ("The plaintiffs concede that the defendants are amenable to process in Austria but contend that 'rare circumstances' are present here because (1) the Austrian courts would require them to post a sub-

stantial bond before they could assert their claims in Austria, [and] (2) Austrian law prohibits contingency fee arrangements, so the plaintiffs would be forced to pay significant attorney's fees just to bring their claims in Austria.... The first two arguments relate to whether the plaintiffs could afford to bring their claims in Austria. In *Murray* the United States Court of Appeals for the Second Circuit held that whether the plaintiff has the financial resources to bring his claim in the alternative forum 'may not be considered in determining the availability of an alternative forum but must be deferred to the balancing of interests relating to the forum's convenience.' Accordingly, the first two arguments will be examined when this Court weighs the relevant public and private interest factors," quoting *Murray, supra,* 81 F.3d at 292–93).[47]

## 2. Whether "Exceptional Circumstances" Justify Dismissal

 Since defendants have demonstrated Taiwan's adequacy as a forum, the court must next consider whether "exceptional circumstances" warrant dismissal of the action. See *Piper, supra,* 454 U.S. at 254, 102 S.Ct. 252. In this regard, it is important to note that plaintiffs in certain of the actions pending before the court are United States residents.[48] "[T]he Su-

---

47. The court will condition dismissal of the action on defendants' agreement that plaintiffs may use discovery taken to date in the Taiwanese forum. See *ACLI Intern. Commodity Services, Inc. v. Banque Populaire Suisse,* 652 F.Supp. 1289, 1296 (S.D.N.Y.1987) ("as to the absence of pretrial discovery in the Swiss system, BPS has stated that it will consent to the use in a Swiss adjudication of the considerable discovery taken to date in this 1982 case in the United States, subject to limitations imposed by customer waivers. The dismissal is conditioned on such consent and BPS' best efforts to effectuate the use of such discovery"). The utility of such a condition may be limited, however, given that dis-

covery to date has focused primarily on jurisdictional issues. (See Pls'. Opp. at 5, n. 3.)

48. In their opposition, plaintiffs state that there are at least eleven "United States plaintiffs." (See Pls'. Opp. at 12–13.) The exhibit they cite, however, indicates that these eleven plaintiffs have brought only five of nearly fifty cases pending before the court. (See Plaintiffs' Appendix Of Exhibits To The Joint Opposition To Defendants' The Boeing Company And China Airlines' Motion To Dismiss On The Grounds Of *Forum Non Conveniens* ("Pls'.App."), Ex. 26.) Plaintiffs represent that eight plaintiffs are United States citizens and California residents, while three have green cards and are California residents. *Id.*

preme Court has clearly and unambiguously established that courts should offer greater deference to the selection of a U.S. forum by U.S. resident plaintiffs when evaluating a motion to dismiss for *forum non conveniens*." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000); see also *DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 62 (2d Cir.2000) ("We recently reaffirmed this holding, by noting that *Guidi* illustrates that a plaintiff's U.S. citizenship and residence is entitled to consideration in favor of retaining jurisdiction" (internal citations omitted)).

The vast majority of the plaintiffs who oppose dismissal are *not* United States residents, however.[49] Courts have held that foreign plaintiffs' choice of forum is entitled to less deference. See *Piper, supra,* 454 U.S. at 255–56, 102 S.Ct. 252 ("[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference"); *Murray, supra,* 81 F.3d at 290 (although "some weight must still be given to a foreign plaintiff's choice of forum," it is "entitled to less deference"); *Friends For All Children, Inc. v. Lockheed Aircraft Corp.,* 717 F.2d 602 (D.C.Cir.1983) (stating that "the district court was mistaken in supposing that a foreign plaintiff's choice of a United States forum is entitled to so much deference"). This is because foreign plaintiffs typically have fewer contacts with the forum, suggesting that they have chosen it for some reason other than convenience. *Base Metal Trading SA v. Russian Aluminum,* 253 F.Supp.2d 681, 693 (S.D.N.Y.2003) (noting that less deference is afforded a foreign plaintiff's choice of forum "not due to any prejudice against foreign plaintiffs, but because courts defer to a plaintiff's choice of the home forum 'because [the home forum] is presumed to

be convenient.' In contrast, when a foreign plaintiff chooses a U.S. forum, it is 'much less reasonable' to presume that the choice was made for convenience" (citation and internal quotation marks omitted)); see also *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 71 (2d Cir. 2003) ("the degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a 'siding scale'"). While plaintiffs have proffered a chart indicating that the plaintiffs who are United States residents live in California and accordingly have significant contacts with the forum,[50] they have not adduced evidence that the forum is convenient for the more than 100 plaintiffs who do not reside in the United States. Because the court cannot determine whether the current forum is in fact convenient for those foreign plaintiffs, and because foreign plaintiffs significantly outnumber resident United States plaintiffs, it cannot afford plaintiffs' choice of forum substantial weight. See *Cheng, supra,* 708 F.2d at 1411 ("[t]he presence of American plaintiffs ... is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens,*" citing, *inter alia, Alcoa Steamship Company, Inc. v. M/V Nordic Regent,* 654 F.2d 147, 154–58 (2d Cir.) (en banc), cert. denied, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980)); see also *Pain v. United Technologies Corp.,* 637 F.2d 775, 796–98 (D.C.Cir.1980) ("[w]e are not convinced ... that plaintiffs' forum choice here deserves extra weight in the 'balance of private conveniences' simply because several of the plaintiffs are American citizens or because one of the plaintiffs is an American resident.... [P]laintiffs here cannot expect the court to defer automatically to their forum choice merely because one of their number is an American resi-

---

49. See Garrison Decl., ¶ 2.

50. See Pls'.App., Ex. 26.

dent. Even federal courts denying dismissals on the grounds of forum non conveniens have always been careful to point out that American citizens and residents have no indefeasible right of access to the federal courts"); *Nai–Chao, supra,* 555 F.Supp. at 21 ("[t]he federal courts have not felt constrained to retain jurisdiction over predominantly foreign cases involving American plaintiffs where an examination of the *Gilbert* factors demonstrated that the action is more appropriately brought in a foreign forum"). Noting, however, that some deference is properly afforded a plaintiff's choice of forum (*Nai–Chao, supra,* 555 F.Supp. at 21), the court next examines whether defendants have demonstrated that "the private and public interest factors set out in [*Gulf Oil Corp. v.*] *Gilbert,* [330 U.S. 501, 67 S.Ct. 839 (1947),] ... weigh so heavily in favor of the foreign forum that they overcome the presumption for plaintiffs' choice of forum.' " *Aguinda,*

*supra,* 142 F.Supp.2d at 547 (quoting *DiRienzo, supra,* 232 F.3d at 56–57).[51]

#### a. Private Interest Factors

In *Contact Lumber Co. v. P.T. Moges Shipping Company Ltd.,* 918 F.2d 1446 (9th Cir.1990), the Ninth Circuit stated that "[p]rivate interest factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial." *Id.* at 1451. Before considering these factors, the court addresses how a liability stipulation offered by defendants affects the analysis.

On May 10, 2004, Boeing and China Airlines notified the court that they had reached an agreement "allowing them to offer stipulations pursuant to which plaintiffs would be fully compensated in the

---

**51.** While the cases that are presently pending before the court have not been formally consolidated, they are subject to the Central District's "mini-MDL" rule. See Ca CD General Order 224, § 5.6. MDL proceedings are a form of consolidated proceedings. See 28 U.S.C. § 1407(a) (authorizing the transfer of actions pending in different districts "to any district for coordinated or consolidated pretrial proceedings"). Even if the cases are considered separately, however, the court cannot conclude that it must retain jurisdiction over those cases brought by United States citizens or residents given the evidence that has been adduced regarding the relative contacts of the actions with the United States and Taiwan. Boeing has adduced significant evidence that even those cases identified by plaintiffs as having been brought by United States residents have substantial connections to Taiwan. (See Boeing's Sur–Reply in Support of Motion To Dismiss on *Forum Non Conveniens* Grounds; see also Second Supplemental Declaration of Melora Garrison ("Second Supp. Decl."), ¶¶ 2–11, Exs. A–L.) Discovery conducted by Boeing indicates, for example, that (1) decedents Johnson Hung and Wu Wei–Chin Hung (Case No. CV 03–3635 MMM), both of whom were apparently

California residents (see Pls'.App., Ex. 26), split their time between Taipei and the United States, and were buried in Taiwan. All financial and tax records that have been provided to date for these decedents have been in Chinese. (Second Supp. Garrison Decl., ¶¶ 3, 8, 14, Ex. B.) (2) Decedents Pai–Hung Shih and Peng–Yu Shih (Case No. CV 03–7555 MMM), who apparently had green cards (see Pls.' App., Ex. 26), were Taiwanese citizens residing in Taiwan (Second Supp. Garrison Decl., ¶ 9, Ex. H), while their heirs, who are apparently California residents, split their time between the United States and Taiwan. (Second Supp. Garrison Decl., Ex. C.) Finally, (3) decedent Yi–Sen Ku (Case No. CV 03–7608 MMM), who was apparently a California resident, also owned a residence in Taiwan, and "traveled back and forth." (Second Supp. Garrison Decl., ¶ 6, Ex. E.) Two U.S. plaintiffs filed cases after defendants filed their motions to dismiss, and no evidence is available regarding the connection of those cases to the Taiwanese forum. Viewing the evidence in totality, however, the court concludes that defendants' showing suffices to overcome any presumptive preference for U.S. plaintiffs' choice of forum.

country of their decedents' domicile, if the Court dismisses their claims on [*forum non conveniens* ] grounds."[51] Defendants represented that they were prepared to compensate all plaintiffs fully in Taiwan, or any other non-U.S. country of a decedent's domicile, and dispute only the amount of compensatory damages that was owed.[52] They argued that this development "nulli-fie[d] the bulk of plaintiffs' [*forum non* ] opposition[, since] plaintiffs would not have to prove liability in a foreign forum."[53] Given their stipulation, defendants assert-ed, "the private interest factors tilt over-whelmingly in favor of the foreign fo-rum."[54]

At the court's direction,[55] plaintiffs filed a response to defendants' notice on June 1, 2004. Plaintiffs argued that they are not bound by defendants' stipulation[56] because they "are entitled to establish the fault and culpability of Boeing and [China Airlines] through affirmative evidence."[57] They as-serted that the court should not require them to accept defendants' stipulation be-cause (1) it would deprive them of double and treble damages under Taiwanese law; (2) it ignores the fact that certain plaintiffs sue on behalf of decedents who were domi-ciled in the United States;[58] (3) it would disadvantage non-Taiwanese plaintiffs by subjecting them to the damages standards of Taiwanese law; (4) it assumes that no trials will occur in this forum, when the filing of three cases governed by the War-saw Convention mandates that those cases proceed here; (5) it would shield Boeing from an examination of the evidence re-garding its liability; and (6) it constitutes a transparent attempt to "foment a conflict of interest amongst and between plaintiffs and their counsel."[59]

The court need not decide whether plaintiffs can be forced to accept defen-dants' stipulation to liability in these ac-tions. Should the court determine that dismissal is appropriate and condition dis-missal on defendants' tendering of the proffered stipulation, plaintiffs are free to argue to the Taiwanese court that they should not be required to accept the stipu-lation.[60] For present purposes, the court

---

**51.** See Notification by Defendant The Boeing Company Re Defendants' Agreement Regard-ing Claims Arising From The Crash of China Airlines Flight 611 (Relevant to Motions To Dismiss Set Hearing on May 24, 2004) ("Defs.' Notification") at 2.

**52.** *Id.* The notification also stated that defen-dants agreed to waive the $75,000 damage limitation imposed by the Warsaw Conven-tion, and not to contest liability for compensa-tory damages in cases where the Convention is applicable. *Id.* at 3.

**53.** *Id.* at 2.

**54.** See Boeing Reply at 8.

**55.** See May 14, 2004 Order Continuing Hear-ing On Motion To Dismiss And Directing Plaintiffs To File Response To Defendants' Reply ("May 14 Order") at 2.

**56.** Plaintiffs assert that defendants' agreement is not a stipulation because it is not a "volun-tary agreement" between "opposing parties." (Pls'. Response at 1.) Whether or not this is true, the court refers to defendants' agree-ment as a stipulation in this order to maintain consistency with its prior orders and the par-ties' briefing.

**57.** See May 14, 2004 Order at 5.

**58.** Plaintiffs assert that three of the cases cur-rently pending before the court are wrongful death claims involving decedents who were United States domiciliaries. (See Pls'. Re-sponse at 14, n. 11; see also Pls'.App., Ex. 26 (identifying Case Nos. CV 03–5705 MMM, CV 03–3635 MMM, and CV 03–7608 MMM as brought on behalf of decedents who were residing in California)). As discussed in note 50, *supra*, however, at least two of these cases have significant connections to Taiwan, and the decedents allegedly domiciled in Califor-nia split their time between Taiwan and the United States.

**59.** See Pls'. Response at 3–17.

**60.** Plaintiffs assert that,"[a]s a general rule with very limited exception, a party is not required to accept a stipulation or judicial

will—as other courts have done when similar stipulations were offered—consider

admission of his adversary, but may insist on proving the matter through affirmative evidence." (Pls'. Response at 5.) The cases plaintiffs cite in support of this assertion are, for the most part, inapposite. Several reference the *government's* right to reject a *criminal defendant's* offer to stipulate to certain elements of a crime. See *Old Chief v. United States*, 519 U.S. 172, 186–89, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *United States v. Chambers*, 918 F.2d 1455, 1462 (9th Cir. 1990); *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir.1986); *United States v. Campbell*, 774 F.2d 354, 356 (9th Cir.1985); *Parr v. United States*, 255 F.2d 86, 88 (5th Cir.1958). Plaintiffs assert that the rule enunciated in *Old Chief* is equally applicable in the civil context. The case they cite for this proposition, however, states only that "[s]tipulations freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions." *United States. v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir. 1986). They also urge that courts should apply the multi-factor test set forth in *Briggs v. Dalkon Shield Claimants Trust*, 174 F.R.D. 369 (D.Md.1997), before requiring a party to accept a liability stipulation in a civil case. *Id.* at 372 (identifying the relevant considerations as "(1) the importance of the facts in question to the case of the party opposing the stipulation (for example, is the fact of modest relevance, or central to the case); (2) the nature of the stipulation, and whether it is qualified or conditional; (3) the scope of the proposed stipulation (stipulation to a specific fact or item of evidence as opposed to a stipulation to one or more elements of a claim or defense); and (4) the impact of the stipulation, if ordered, on the burden of persuasion borne by the party resisting the stipulation"). The *Briggs* court held that "[n]o absolute rule should be followed," and that courts should consider the factors identified as well as "the weight and fair impact the 'live' evidence would have on the fact-finder" in determining whether to require that a plaintiff accept a stipulation and limit its proof. *Id.* at 374.

Defendants argue that courts commonly accept liability stipulations because "[s]uch agreements allow for 'simplification of the issues' and 'the avoidance of unnecessary proof' " under Rule 16 of the Federal Rules of Civil Procedure. (See Boeing Reply at 25.) Defendants' stipulation is not included in a

first the private interest factors identified in *Contact Lumber,* and thereafter evalu-

Rule 16 pretrial conference order, however. Courts, moreover, disagree as to whether plaintiffs can be compelled to accept such stipulations. Compare *J.F. Edwards Construction Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1324 (7th Cir.1976) (holding that Rule 16 does not permit a court to force parties to stipulate to facts) with *United States v. A T & T Co.*, 83 F.R.D. 323, 332 (D.D.C.1979) (stating that "Rule 16 contemplates that the Court may compel parties to stipulate as to all matters concerning which there can be no real issue").

In short, there is no clear rule governing offers to stipulate to liability in civil cases. Even if there were, however, it would be applicable only to cases pending in the United States. Defendants do not offer to stipulate to liability if the cases remain pending in a United States court. Plaintiffs thus fail to address the relevant questions. These are whether a Taiwanese court would accept defendants' stipulation over plaintiffs' objection, and whether it would permit them to present evidence regarding liability once defendants offered such a stipulation. Defendants' experts opine that a Taiwanese court would compel plaintiffs to accept the liability stipulation, and that it would not be required to admit plaintiffs' liability evidence once the stipulation was tendered. (See Supplemental Declaration of Professor Sheng–Lin Jan ("Jan Decl.")), ¶¶ 2–9 (stating that defendants' stipulation would constitute a "debt acknowledgment" that would be valid and enforceable under Taiwanese law; that such an acknowledgment "can be rendered unilaterally by the debtor without requiring ... the creditor's consent"); and that under the Taiwan Civil Procedure Code, ("courts in Taiwan are not required to allow a party to present evidence on issues that the opposing party has agreed not to dispute"). Should the case be dismissed on *forum non conveniens* grounds, the viability of the stipulation would, of course, be decided under Taiwanese law. The only relevance of the stipulation at this stage, therefore, is its impact on the ease of access to sources of proof. Given the evidence defendants have proffered, the court concludes, as detailed *infra*, that the liability stipulation would potentially make Taiwan a more convenient forum in this regard.

ate the effect of the proposed stipulation on analysis of those factors. Cf. *Pain, supra,* 637 F.2d at 786 (comparing the relative ease of access to sources of proof in light of the "theories of the case each party will seek to prove in alternative forums," and noting that "UTC's liability would be at issue only if the trial were conducted in the United States"); *Jennings v. Boeing Co.,* 660 F.Supp. 796, 805 (E.D.Pa.1987) (noting, in evaluating the private interest factors identified in *Gilbert,* that "[i]f the trial were held in the British courts, it is likely that, at least with regard to the plaintiff's case, only evidence regarding damages issues would be required in light of Boeing's concession [regarding liability]"); *In re Disaster at Riyadh Airport,* 540 F.Supp. 1141, 1151, n. 27 (D.D.C.1982) (initially evaluating each factor without considering defendants' willingness to concede liability, and thereafter concluding that "defendants' concession of liability strongly skews the private interest

factors in this case in favor of the use of a foreign forum").[61]

[■] In considering the effect of defendants' proposed stipulation on the private and public interest factors, the court bears in mind that "[t]he issue of overriding importance in a *forum non conveniens* analysis is that of convenience." *Jennings, supra,* 660 F.Supp. at 799–800 (citing *Piper, supra,* 454 U.S. at 249, 102 S.Ct. 252).

### (i) Ease Of Access To Sources Of Proof

Plaintiffs and defendants appear to agree that, because the vast majority of the decedents were Taiwanese, the witnesses and documents needed to prove damages are located largely in Taiwan.[62] It also appears that the majority of the physical evidence regarding the crash is located in Taiwan. Defendants assert, and plaintiffs do not dispute, that the accident

---

**61.** Defendants assert that "[i]n similar cases in which defendants agreed not to contest liability in the foreign forum, courts have uniformly granted [*forum non* ] dismissal." (Boeing Reply at 1.) The court's research indicates that a liability stipulation does not automatically compel dismissal, however. See *Fiacco v. United Technologies Corp.,* 524 F.Supp. 858, 860, 861–62 (S.D.N.Y.1981) (denying defendants' motion to dismiss despite "[t]he fact . . . that defendant . . . consented to jurisdiction in Norway, and . . . sweetened the deal by agreeing to concede liability if the action is transferred there"); *Machline v. Nat'l Helicopters,* No. 94 CIV. 8456(LBS), 1995 WL 251540, *1, 3 (S.D.N.Y. May 1, 1995) (denying a motion to dismiss on *forum non conveniens* grounds notwithstanding defendant's offer not to contest liability).

**62.** Boeing Mot. at 12–13; see also Garrison Decl., ¶ 3 ("Plaintiffs' responses to defendants' discovery requests indicate that the vast majority of plaintiffs' damages evidence is located in Taiwan. Decedents' employers, brokerage and bank accounts, and real property owned for the past ten years (if any) are overwhelmingly located in Taiwan. Decedents' health care providers for the five years

prior to the accident are overwhelmingly located in Taiwan. Decedents' relatives and alleged beneficiaries, including plaintiffs, and decedent's closest friends who had the best opportunity to observe decedents' intrafamilial relationships are overwhelmingly located in Taiwan. The vast majority of documents necessary to establish financial loss in these cases, including tax returns, pay stubs, documents relating to funeral, mortuary, or burial expenses, documents regarding communications to or from employers, and documents describing each decedent's business or occupation, are located in Taiwan"); Pls'. Opp. at 23 ("As for damages, plaintiffs largely control that evidence and are willing to produce damages information because, among other things, it is plaintiffs, not defendants, who are prejudiced from being unable to secure or present proper damages evidence"). As defendants note, however, because "[s]ome of these documents may be within plaintiffs' 'control,' . . . to the extent that plaintiffs unilaterally choose not to [obtain and produce them] defendants are left without recourse." (Boeing's Reply at 15.)

investigation has been led by Taiwanese governmental authorities, and most specifically, by the Taiwan Aviation Safety Council ("ASC").[63] Boeing and the National Transportation Safety Board ("NTSB") have participated in the investigation, although evidence adduced by Boeing indicates that it has assisted in the investigation "at the pleasure of the ASC and NTSB." [64] Accident investigators recovered the majority of the aircraft from the Taiwan Strait, and the physical wreckage was initially examined both in Taiwan and at Boeing facilities in the United States.[65] The wreckage examined in the United States has since been returned to Taiwan, and the aft fuselage wreckage, which has been the focus of the investigation,[66] has been assembled in an aircraft hangar in Taiwan.[67] The majority of the analysis conducted on the flight data and cockpit voice recorders was completed in Taiwan, and those recorders are now in the possession of the ASC.[68]

Defendants assert that in addition to this physical evidence, the "overwhelming weight of liability evidence is in Taiwan." [69] China Airlines, for example, has kept repair, maintenance, and inspection records since it purchased the aircraft in 1979. These records, which defendants contend constitute critical liability evidence,[70] are located exclusively in Taiwan.[71] Plaintiffs do not dispute that repair and maintenance records for the aircraft are in Taiwan. They assert, however, that there is significant documentary evidence located in the United States because the "focus of liability issues" is "squarely on Boeing's activities." [72] Plaintiffs contend that Boeing designed, manufactured, and tested the accident aircraft; provided updated manuals and Field Service Representatives to assist in the maintenance, repair, and inspection of the aircraft; and, most importantly, was "acutely aware" of the "catastrophic consequences" repairs can have on aging aircraft, and participated in

**63.** See Declaration of Simon Lie ("Lie Decl."), ¶ 3; Lee Decl., ¶ 21; Pls'. Opp. at 3–4 ("The Taiwanese Aviation Safety Council ("ASC"), assisted by the U.S. National Transportation Safety Board ("NTSB"), the U.S. Federal Aviation Administration ("FAA"), Boeing, and CAL investigated the accident").

**64.** Lie Decl., ¶ 3.

**65.** The examiners included members of the ASC, the Taiwan Civil Aeronautics Administration ("CAA"), the NTSB, the Federal Aviation Administration ("FAA"), and Boeing. *Id.*, ¶ 6(a).

**66.** *Id.*, ¶ 5 ("The focus of the investigation continues to be an inflight structural breakup of the aircraft initiating in an area of the aft fuselage containing a structural repair that China Airlines performed in Taiwan after a tailstrike incident in 1980"); see also Pls'. Opp. at 4 ("On June 3, 2003, the ASC released an extensive factual report concluding that the accident resulted from fatigue failure of the pressurized fuselage"); compare China Airlines Mot. at 6 ("The cause of the breakup is still under investigation").

**67.** *Id.* The frame "is approximately 70 feet long, 20 feet wide, and 25 feet high." *Id.*

**68.** *Id.*

**69.** China Airlines Mot. at 17.

**70.** *Id.* at 18. Boeing argues that the focus of the investigation is "a structural repair that China Airlines performed in Taiwan following a tailstrike incident in 1980." (Boeing Mot. at 14.) While China Airlines does not adopt this characterization, it notes that relevant aircraft repair and maintenance records are in Taiwan.

**71.** See Lee Decl., ¶ 8 ("[China Airlines'] engineering and maintenance facilities, which are responsible for the repair and maintenance of [China Airlines'] fleet of aircraft, are located in Taiwan. All of China Airlines' records relating to the history, operation, and maintenance of the aircraft, including any records which may exist in connection with this aircraft, are maintained at [China Airlines'] facilities in Taiwan").

**72.** Pls'. Opp. at 2.

a number of accident investigations and Congressionally-mandated programs. They maintain that evidence regarding these activities, including Boeing's "decades-long study of the dangers of structural failure due to repairs to aging aircraft," [73] is located in the United States.[74] Plaintiffs assert that Boeing maintains evidence regarding the CI611 crash at its facilities in the United States as well. They describe the relevant documents in Boeing's possession as "voluminous and all in English," [75] and argue that this weighs in favor of a finding that there is greater access to sources of proof in the current forum than in Taiwan. Boeing counters that the liability issues identified by plaintiffs are "tenuously relevant at best, since the break-up of the aircraft appears to have originated in an area where a repair was not done according to Boeing's recommendation in the first place." [76] Boeing also notes that, as a condition of dismissal, it has agreed to make available for trial in Taiwan any evidence in its possession that the Taiwanese court may deem relevant.[77]

While the parties dispute the location of the relevant liability proof, there is no question that damages proof is overwhelmingly located in Taiwan. Given the number of decedents, the volume of this evidence is substantial. Even if there were significant liability evidence both in the United States and Taiwan, therefore, a Taiwan forum would offer greater ease of access to sources of proof overall. The court concludes, moreover, that a majority of the liability evidence regarding the accident aircraft is located in Taiwan. The crash site is within Taiwanese territorial waters, and China Airlines' repair and maintenance records are located in Tai-

wan. The physical wreckage of the accident aircraft is in Taiwan, and some, if not most, of the documents generated the ASC may be subject to compulsory production only in Taiwan.[78] Boeing, moreover, is willing to produce any evidence deemed relevant to liability by the Taiwanese court in Taiwan. Accordingly, the court concludes that Taiwan is the forum that offers greater ease of access to sources of proof. See, e.g., *Nai–Chao, supra,* 555 F.Supp. at 17–18 (granting defendant's motion for dismissal where, *inter alia,* "[e]vidence pertaining to ... maintenance ... of the aircraft during the five-and-a-half year period preceding the crash ... is located in Taiwan[; a] view of the premises is obviously available only in Taiwan, and might assist defendants ... [and] virtually all of the evidence relating to proof of damages is in Taiwan, where the overwhelming majority of claimants reside, and the difficulties of adjudicating these foreign damage claims would be compounded by the presence of language barriers and the necessity for translation"); *Riyadh Airport, supra,* 540 F.Supp. at 1146–47 (after observing that evidence regarding the maintenance of the aircraft and decedents' damages was located in a foreign forum, while design defect evidence was located in the United States, making "the issue ... close," the court concluded that "overall the ease of access to all sources of proof in these cases would be furthered by trial in a foreign forum"); see also *Piper, supra,* 454 U.S. at 257, 102 S.Ct. 252 (concluding, although plaintiff "would have greater access to sources of proof relevant to her strict liability and negligence theories if trial were held here ...," that "the District Court did not act

---

**73.** *Id.* at 24–25; see also Pls'.App., Ex. 2, 3 (Deposition of Simon Lie ("Lie Depo.")).

**74.** *Id.* at 1–2.

**75.** Pls'. Opp. at 25.

**76.** Boeing Mot. at 15.

**77.** *Id.* at 12; see also Garrison Decl., ¶ 5.

**78.** See China Airlines Mot. at 19; Shao Decl., ¶ 25.

unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland. A large proportion of the relevant evidence is located in Great Britain").

Defendants contend their proposed stipulation reinforces this conclusion because, with liability resolved, "the only relevant evidence pertains to damages," and that "evidence [is] located in the foreign plaintiffs' home forum." [79] Plaintiffs respond that, even if defendants' stipulation is accepted, liability evidence will remain relevant because Taiwan's Consumer Protection Law ("CPL") authorizes the recovery of double damages on proof of negligence, and treble damages on proof of wrongful misconduct.[80] Defendants' expert disputes this. He notes that the CPL does not apply retroactively, and that, because the law was enacted in 1994, it would not apply to Boeing's design and manufacture of the aircraft in the 1970s.[81] Moreover, although Boeing could potentially be found liable for post-sale failure to warn, defendants' expert states that Article 10 of the CPL—which governs such a claim—"does not contain an express cause of action that creates liability to consumers on a post-sale duty to warn theory." [82] For this reason, the expert notes, "no case in Taiwan has allowed a private claim for puni-

tive damages under the CPL for a violation of Article 10." [83]

Given the testimony of defendants' expert, their proffered liability stipulation strengthens the conclusion that Taiwan provides greater ease of access to proof.[84] See *Riyadh Airport, supra,* 540 F.Supp. at 1151, n. 27 ("defendants' liability concession would remove the . . . liability theory categories [of evidence] from consideration, thereby leaving the ease of access to the fourth category of evidence, damages, as the sole consideration under this private interest factor").

### (ii) Compulsory Process And Travel Of Witnesses

 Defendants contend that the second *Contact Lumber* factor also strongly favors dismissal. They identify several categories of witnesses who will be beyond the subpoena power of the court if the actions proceed here, including individuals participating in the ASC investigation; former China Airlines employees and current employees who are not officers of the company; and individuals who testify regarding damages for each decedent, including beneficiaries, relatives, friends, employers, and health care providers.[85] Plaintiffs contend that because defendants have failed to identify specific witnesses

79. Boeing Reply at 8.

80. Pls'. Response at 12. Plaintiffs assert, in fact, that because defendants' stipulation is limited only to compensatory damages, "a convenient byproduct . . . would be to preclude an award of punitive damages under Taiwanese law." (Pls'. Response at 11.)

81. See Supp. Jan. Decl., ¶ 10 ("The CPL was implemented on January 13, 1994. I am informed that the subject aircraft was delivered by Boeing in 1979. Therefore, the CPL does not apply to Boeing's design and manufacture of the aircraft. The CPL also does not apply to any conduct by Boeing prior to January 13, 1994").

82. Supp. Jan. Decl., ¶ 11.

83. *Id.,* ¶ 12.

84. Another of defendants' experts opines that, under Taiwan's Civil Aviation Act, "[w]here damage to passenger or freight was the result of willful or major neglect or wrongdoing on the part of the *aircraft operator or consignor,* liability will not be limited to the compensation standard prescribed herein." (See Shao Decl., ¶¶ 18–19 (emphasis added)). Because only China Airlines can be held liable under the Civil Aviation Act, and because the bulk of the evidence regarding its liability is located in Taiwan, the possibility that liability might be imposed under the Civil Aviation Act does not alter the court's conclusions.

85. See Boeing Mot. at 17; Boeing Reply at 12; Supp. Garrison Decl., ¶ 3 (noting that during discovery "plaintiffs have identified approximately 160 Taiwanese residents [who are close friends of decedents]; . . . 85 Taiwa-

who could not be served with compulsory process and who would be unwilling to testify the United States, they have "failed to meet their heavy burden of proof" on this issue.[86] Plaintiffs also argue that numerous critical witnesses live and work in the United States, including Boeing's investigators; the Field Service Representatives it provided to assist China Airlines in maintaining the aircraft; and Boeing employees and government witnesses who participated in the company's aging aircraft study.[87] Plaintiffs assert that defendants have significantly overstated the difficulties of trying the cases in this forum, given that they are both "multi-national businesses" with vast resources who are "well-equipped to transport witnesses and documents to this forum." [88]

] Defendants have identified potentially unavailable witnesses with adequate specificity. In *Gates Learjet v. Jensen*, 743 F.2d 1325 (9th Cir.1984), the Ninth Circuit reversed a dismissal on forum *non conveniens* grounds because, *inter alia*, the "district court improperly focused on the number of witnesses in each location" rather than "examin[ing] the materiality and importance of the anticipated witnesses' testimony and then determin[ing] their accessibility and convenience to the forum." *Id.* at 1335–36. To carry their burden on this factor, therefore, defendants must delineate how witnesses not subject to compulsory process are critical to the actions. They are not, however, required to identify each potentially critical witness, nor to submit affidavits that provide significant evidentiary detail. See

*Piper, supra,* 454 U.S. at 258, 102 S.Ct. 252 (rejecting the suggestion that "defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum," and noting that "[s]uch detail is not necessary. Piper and Hartzell have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion"). Defendants have identified a number of critical witnesses who cannot be compelled to provide testimony in this forum, including accident investigators, former employees of China Airlines who repaired and/or maintained the aircraft, and the families and friends of the decedents.[89] In *Piper, supra,* the Court found such circumstances compelling when considering the private interest factors:

"The real parties in interest are citizens of Scotland, as were all the decedents. Witnesses who could testify regarding the maintenance of the aircraft, the training of the pilot, and the investigation of the accident—all essential to the defense—are in Great Britain. Moreover, all witnesses to damages are located in Scotland. Trial would be aided by familiarity with Scottish topography, and by easy access to the wreckage.... [B]ecause crucial witnesses and evidence were beyond the reach of compulsory process, and because the defendants would not be able to implead potential

---

nese employers of decedents; 58 Taiwanese health care providers for decedents; and 57 of decedent's relatives residing in Taiwan").

**86.** Pls'. Opp. at 18.

**87.** See Pls'. Opp. at 19–22; see also Pls'.App., Exs. 2, 3, 32.

**88.** *Id.* at 18.

**89.** Plaintiffs do not appear to dispute that the majority of these witnesses are beyond the subpoena power of the court, although they note that 28 U.S.C. § 1783 "specifically provides for worldwide service of a subpoena on any person who is a national or resident of the U.S." (Pls'. Opp. at 19.)

Scottish third-party defendants, it would be 'unfair to make Piper and Hartzell proceed to trial in this forum.'" *Piper, supra,* 454 U.S. at 242, 102 S.Ct. 252. See also *Lueck, supra,* 236 F.3d at 1146–47 (noting that "[t]he ... witnesses in New Zealand ... are not so easily summoned to the United States.... [M]any of the New Zealand ... witnesses are [not under plaintiffs' control but] under the control of the New Zealand government or Ansett. The district court does not have the power to order the production or appearance of such ... witnesses"); *Nai–Chao, supra,* 555 F.Supp. at 18 (although witnesses regarding the design and manufacture of the aircraft were "clearly subject to process in this Court," the court dismissed on *forum non conveniens* grounds because "all witnesses who could testify as to the inspection and maintenance of the aircraft [after sale] and all witnesses who could testify regarding the investigation of the accident by Taiwanese authorities, as well as witnesses who knew the decedents and whose testimony would be necessary to ascertain damages, are located in Taiwan," and it was doubtful that the "Court could enforce process compelling the attendance of persons with relevant knowledge who are not parties to this litigation").

Here, the court can condition any dismissal on Boeing's agreement to produce its employees in Taiwan. See, e.g., *Piper, supra,* 454 U.S. at 258 n. 25, 102 S.Ct. 252 ("In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the rec-

ords relevant to the plaintiff's claims"). As these are the majority of the critical United States witnesses identified by plaintiffs, such a condition would preserve their ability to obtain necessary evidence. Former employees and non-officers of China Airlines, moreover, would be subject to subpoena in Taiwan and thus be available to plaintiffs in that forum.[90] Participants in the ASC investigation, who are largely Taiwanese residents, would likewise be subject to compulsory process, as would the numerous witnesses regarding plaintiffs' damages claims.[91] If trial were to proceed in this district, by contrast, ASC investigators, former China Airlines employees, and damages witnesses would be presumptively unavailable. Additionally, U.S. government witnesses and former Boeing employees might well be outside the 100-mile radius that defines the subpoena power of the court. See FED.R.CIV. PROC. 45(b)(2).

Although plaintiffs represent they will make witnesses with information relevant to damages available if trial proceeds in this forum, the court must consider the cost of obtaining these witnesses' participation. See *Riyadh Airport, supra,* 540 F.Supp. at 1148 (considering whether witnesses would be subject to compulsory process, evaluating the cost of securing the presence of willing witnesses, and concluding that "a deeper look reveals that these cost considerations slightly favor trial in a foreign forum"). Should trial proceed in Taiwan, Boeing will incur costs transporting its employees and witnesses to the forum.[92] If the actions are tried here, by

90. See Shao Decl., ¶ 24.

91. See note 85, *supra.*

92. In contrast, far fewer costs would result from damages witnesses were trial to proceed in Taiwan. See China Airlines Mot. at 20–21 ("There are substantially more than two hundred individual heirs who are plaintiffs in

these 124 lawsuits. The vast majority of these heirs live and work in Taiwan. A few live and work in China and Hong Kong. Much fewer still ... reside in the United States. All of the more than two hundred Taiwanese heirs are, at least potentially, damage witnesses. If the lawsuits remain in the United States, the cost of bringing even a fraction of them to the United States, and housing them here, for

contrast, all parties will incur witness transportation costs. China Airlines will have to bring its employees from Taiwan, and plaintiffs' damages witnesses will have to travel here. Boeing will *still* incur costs bringing employees to trial, as most are located at the company's headquarters in Washington and at other relevant locations throughout the country.[93]

The court recognizes that a dismissal on *forum non* grounds may make certain witnesses unavailable to plaintiffs. Given that more critical witnesses would be beyond compulsory process here than in Taiwan, and that overall witness transportation costs may decrease if the cases are tried in Taiwan, however, the court finds that the second *Contact Lumber* factor weighs slightly in favor of dismissal. As with the ease of access to proof, moreover, the prospect that defendants will stipulate to liability—obviating the need for liability witnesses—strengthens the court's conclusion. See *Riyadh Airport, supra,* 540 F.Supp. at 1148 ("Defendants' concession of liability would apparently make it unnecessary for any liability witnesses to be transported anywhere in these cases and, thus, there would be no costs associated with those witnesses. The only remaining cost consideration, therefore, would be the cost of transporting willing damages witnesses to the place of trial. Obviously,

trying these cases in the domicile of each individual decedent would involve the least cost in obtaining these witnesses' attendance").

### (iii) Other Relevant Factors

██ In *Contact Lumber, supra,* the Ninth Circuit included among the relevant private interest factors were "other problems that interfere with an expeditious trial." Plaintiffs identify a series of problems that they contend will interfere with expeditious trial of the actions in Taiwan. They assert that the scarcity of contingency fee representation, the absence of pretrial discovery and alternative dispute resolution, and the lack of a right to jury trial will make it exceedingly difficult for them to proceed in that forum.[94] Because Taiwanese courts require that all documents and testimony be presented in Mandarin Chinese, plaintiffs also contend that translating the relevant documents would be logistically challenging and "financially overwhelming." Plaintiffs estimate that translation costs would exceed $645,000.[95]

Addressing translation costs first, the court notes that translation of documents and testimony will be required whichever forum is selected. China Airlines' repair and maintenance records will most likely have to be translated if the actions proceed in this forum.[96] Damages records—includ-

---

pre-trial discovery or trial, would be enormous relative to the minimal expense of having them present their cases to the courts of Taiwan, where they live and work").

**93.** See China Airlines Mot. at 20 (noting that even if liability witnesses reside in the United States, "[n]one are in California"); see also Pls'. Ex. 32 at 29 (identifying twenty individuals who served as Field Service Representatives to Taiwan from 1979 to the present, only two of whom reside in California).

**94.** See Pls'. Opp. at 28–31.

**95.** See Declaration of Professor Jason Shing–Ger Lin ("Lin Decl."), ¶ 9.3 ("Taiwan courts always require that any document in a foreign

language be translated into Chinese to be presented as evidence in court. Where a translation service is retained, the fees for the translation will normally be assessed on a case by case basis depending on the contents of the translation. According to President Translation Service Group International of Taiwan, it may charge ... approximately $303 ... for translating 5,000 words of a technical document, and the time required for translating the 5,000 words may be 4 to 5 days").

**96.** Defendant China Airlines provides no evidence regarding this factor.

ing pay stubs, health records, employment records, and documents regarding funeral or burial expenses—as well as testimony regarding support, maintenance, and life expectancy—will have to be translated as well. Defendants proffer little evidence regarding the attendant costs, however,[97] and the court accordingly concludes that the cost of translation weighs slightly in favor of retaining the action in this forum.[98]

Similarly, while not sufficient to render Taiwan an inadequate forum, plaintiffs' concerns regarding Taiwanese litigation procedures weigh in favor of a United States forum. As is true with respect to other private interest factors, however, it appears that defendants' proposed liability stipulation will substantially alleviate plaintiffs' concerns. Should the court condition dismissal on defendants' willingness to stipulate to liability, for example, the need for pretrial discovery and alternative dispute resolution, and the importance of contingency fee representation, will decrease, as the only outstanding issue will be damages.[99]

In sum, plaintiffs have demonstrated that the potential cost of translation services, the unavailability of pretrial discovery and alternative dispute resolution services, and the scarcity of contingent fee representation weigh in favor of retaining the cases in this jurisdiction. Because these problems can be mitigated to some extent by defendants' proffered liability stipulation, however, they favor retention only slightly.

### (iv) Conclusion Regarding Private Interest Factors

The ease of access to proof and the amenability of witnesses to compulsory process, as well as the cost of bringing willing witnesses to trial, all weigh in favor of a finding that Taiwan is the more convenient forum. Other relevant factors favor trying the cases in this forum, but are not sufficient to overcome the weight of the proof and witness factors. Accordingly, the court concludes that the private interest factors favor dismissal on *forum non conveniens* grounds. See *Riyadh Airport, supra,* 540 F.Supp. at 1151 (concluding, in a case where "1) the ease of access factor slightly favors the use of a foreign forum; 2) the compulsory process factor is in equipoise; 3) the cost consideration factor favors the use of a foreign forum; 4) the view of the accident scene factor is inapplicable; and 5) the other practical problems factor is insignificant," that the "private

97. In its initial motion, Boeing states that "[i]f damages issues are allowed to proceed in this Court, most of the relevant documents and testimony will ... require translation from Chinese into English, with the accompanying delay, cost, and potential for mistakes." (Boeing Mot. at 13.) In its reply, Boeing asserts that "nearly all of the Taiwanese damages witnesses would likely require interpreters in a U.S. forum, and virtually all of the damages documents located in Taiwan are in Chinese and would have to be translated into English." (Boeing Reply at 16); Supp. Garrison Decl., ¶ 3 ("[t]he documents attached to the discovery responses in this case are all in Chinese, and are representative of other documents produced by plaintiffs in response to defendants' discovery requests").

98. In addition to conditioning dismissal on Boeing's agreement to make all evidence the Taiwanese court deems relevant available in that jurisdiction (see Garrison Decl., ¶ 5), the court will also require that Boeing translate its documents and the testimony of its witnesses into Mandarin Chinese as necessary.

99. The court notes, in this context, the testimony of defendants' expert that there is little possibility plaintiffs will be able to recover double or treble damages from Boeing. See notes 81–84, *supra,* and accompanying text. To the extent plaintiffs are able to recover such damages from China Airlines, moreover, the proof needed to secure the award will be found in Taiwan.

interest factors favor the use of a foreign forum"). The court reaches this conclusion without consideration of defendants' proffered liability stipulation. When the proposed stipulation is taken into account, the result is even clearer, as it reduces the likelihood that the procedural problems plaintiffs identify will hamper their ability to achieve a fair recovery. *Id.* at 1151 n. 27 ("... because this court's private interest analysis slightly favors the use of a foreign forum even in the absence of defendants' liability concession, this court declines to find that defendants' motion for dismissal is either disingenuous or improperly motivated. The defendants' concession of liability has not totally tipped or altered the scales of convenience, but instead has merely clarified and strengthened the already existing balance").

### b. Public Interest Factors

 As noted, relevant public interest factors include (1) *court congestion*; (2) the unfairness of burdening citizens in an unrelated forum with jury duty; (3) the interest in having localized controversies decided at home; (4) the interest in trying the case in a forum familiar with the applicable law; and (5) the interest in avoiding unnecessary conflicts of laws. *Gulf Oil, supra,* 330 U.S. at 508–09, 67 S.Ct. 839; *Rosa, supra,* 211 F.3d at 512. Defendants contend that each of these factors favors dismissal; plaintiffs assert they favor retention. The court considers each in turn.

### (i) Court Congestion

The Central District of California (the "Central District") is one of the busiest districts in the country. In 2003, 14,720 cases were filed in the Central District.[100] The median time from filing to disposition is 7.5 months. For civil cases proceeding to trial, however, the median time from filing to trial is 21.2 months.[101] As of 2003, the District had 609 civil cases that were more than three years old.[102] This court currently has 350 cases on its active civil docket, and handles criminal cases in addition to its civil matters. See *Nai–Chao, supra,* 555 F.Supp. at 19 ("[i]t is beyond dispute that the docket of [the Northern District of California] is heavily congested").

Defendants have submitted evidence, by contrast, that completing a civil lawsuit in Taiwan at the district court level takes, on average, between 78 and 86 days.[103] Plaintiffs argue that defendants' statistics prove too much, because "the effect that congestion will have on the expeditious resolution of this lawsuit pales in comparison to the processes of the Taiwanese court system."[104] Plaintiffs cite the declaration of their expert, who opines that "the total time for the prosecution, trial and appeal of the wrongful death cases arising from the crash of the Flight CI611 will take [seven] or more years from the date of their original filing in Taiwan."[105] This figure, however, includes both trial *and* all appeals. In his deposition, plaintiffs' expert estimated that a general wrongful death or injury case would be tried within one year, and that the initial appeal phase would be completed within one or two years.[106]

Plaintiffs contend that these cases would take "longer than the ordinary case" to try in the Taiwanese courts.[107] The same,

---

100. See Garrison Decl., ¶ 8, Ex. E (Judicial Caseload Profile for the Central District of California, maintained at www.uscourts.gov).

101. *Id.*

102. *Id.*

103. See Jan Decl., ¶ 29.

104. Pls'. Opp. at 36.

105. See Chen Decl., ¶ 36.

106. See Chen Depo. at 50:10–13.

107. *Id.* at 51:12.

however, can be said of trial in the Central District. Given the number of plaintiffs and the complexity of the actions, it is likely that the District's "median time" of 21.2 months to trial will be exceeded in these actions. This is confirmed by a review of the actions' procedural history to date. Plaintiffs filed their complaints more than a year ago.[108] Since that time, the parties have conducted limited jurisdictional discovery. Once defendants' motion to dismiss on *forum non conveniens* grounds is resolved, the parties anticipate bringing motions to remand certain cases to state court. Only after these preliminary issues are decided will discovery begin in earnest. As a result, it is clear that the median 21.2 months to trial will be exceeded.[109]

 As the Ninth Circuit noted in *Gates, supra*, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates, supra*, 743 F.2d at 1337. Here, it is difficult to ascertain whether retention of the actions in the United States or transfer to Taiwan would result in a more expeditious resolution of plaintiffs' claims. If the court conditions dismissal on defendants' willingness to stipulate to liability, however, this factor would weigh more heavily in favor of dismissal. See *Riyadh Airport*, 540 F.Supp. at 1150 (noting that defendants' liability concession would "clearly make the trial of these cases easier, more expeditious and less expensive" because "neither a trial on liability issues nor any discovery on liability issues would need to be undertaken in these cases"). Accordingly, the court finds

that the relative congestion of the courts is either neutral or, when defendants' stipulation is considered, that it weighs slightly in favor of dismissal. Congestion, however, is afforded little weight in assessing the public interest factors. See *Gates, supra*, 743 F.2d at 1337 ("[t]he district court here observed only that its docket was congested; it did not determine whether a trial would be speedier in the Philippines. Even if it were, however, it is unfair for a court to subject a United States corporation to the courts of another country merely because plaintiff's home country courts are congested. The *forum non conveniens* doctrine should not be used as a solution to court congestion; other remedies, such as placing reasonable limitations on the amount of time each side may have to present evidence, are more appropriate"). The court thus turns to the remaining factors.

### (ii) Local Controversy

Defendants argue that plaintiffs' cases "can hardly be characterized as a local California controversy" given that they arise from a crash in Taiwan of an aircraft operated by a Taiwanese airline.[110] Plaintiffs counter that the United States has a substantial interest in the dispute and that the proper comparison is between the United States and Taiwan, not California and Taiwan. Contrary to plaintiffs' suggestion, it is not improper for a court to consider contacts with the actual forum— i.e., California—when evaluating a motion to dismiss on *forum non conveniens* grounds. See *Mercier v. Sheraton International, Inc.*, 981 F.2d 1345, 1355 (1st

---

108. See Complaint (filed May 22, 2003).

109. The court notes plaintiffs' argument that Taiwanese law in effect at the time Flight CI611 crashed "would require that each of the wrongful death cases arising from the crash be assigned to and tried by different

judges or courts." (Chen Decl., ¶¶ 34–35.) Ironically, although this fact might burden the Taiwanese courts (*id.*), it might actually increase individual plaintiffs' ability to obtain a speedy resolution of their claims.

110. Boeing Mot. at 18.

Cir.1992) ("*Mercier II* did not state that a district court could not recognize, as a factor to be considered in its *forum non conveniens* analysis, the attenuated connection between the matter in litigation and the particular forum selected within the United States. Rather, we pointed out that the connection between the matter in litigation and the particular forum within the United States may not wholly supplant the dominant transnational comparison required where 'the choice facing the district court [is] between two countries.' ... Provided adequate recognition is accorded the substantial public interest in providing a convenient United States forum for an action in which all parties are United States citizens and residents ... the trial court may weigh, as a subsidiary consideration, any attenuated connection between the particular United States forum and the matter in litigation," citing *Gates, supra,* 743 F.2d at 1336 (comparing the Philippines to Arizona), and *Pain, supra,* 637 F.2d at 792 ("courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; [and] may legitimately encourage trial of controversies *in the localities in which they arise* ") (emphasis added)). Even when the United States is used as the point of comparison, however, it is clear that the jurisdiction that is most closely associated with plaintiffs' claims is Taiwan.

As noted, flight CI611 was a regularly scheduled China Airlines flight from Taipei, Taiwan to Hong Kong, China. China Airlines is incorporated in Taiwan, and maintains its corporate headquarters and principal place of business there. China Airlines purchased the accident aircraft from Boeing twenty-three years before the crash, and maintained and repaired the aircraft at all times in Taiwan. Flight CI611 was not scheduled to continue to the United States or to have any contact with the United States. It crashed in Taiwanese waters. The vast majority of the decedents were Taiwanese citizens and residents; similarly, the vast majority of the plaintiffs who have brought suit are Taiwan citizens and residents. The accident investigation was spearheaded by the Taiwanese Aviation Safety Council, which is comprised of Taiwanese nationals who reside in Taiwan. As even this brief recitation demonstrates, the cases are overwhelmingly connected to Taiwan.

Plaintiffs contend that the litigation has a significant connection to the United States because Boeing designed and manufactured the aircraft; provided repair manuals and Field Service Representatives to China Airlines; [111] and participates in the Aging Aircraft Program monitored by the United States government.[112] They assert that the United States has an interest in potentially defective items sold by United States manufacturers, and contend that the United States government is actively involved whenever a crash of a Boeing-manufactured aircraft occurs. Plaintiffs also maintain that the United States "has shown an unflagging interest in the hazards posed by widespread fatigue damage due to repairs to aging aircraft." [113] Because China Airlines uses Boeing aircraft for regular daily flights to and from the United States, including Los Angeles,

---

**111.** As China Airlines notes, the force of this argument is diminished because many of Boeing's relevant contacts took place in Taiwan. Taiwan "is where the Boeing repair and maintenance manuals were kept and used with respect to this aircraft [and if] any Boeing technical representatives to [China Air-

lines] were involved in any relevant acts or omissions, it would have been in Taiwan." (China Airlines Reply at 13.)

**112.** Pls'. Opp. at 32–33.

**113.** *Id.* at 34.

plaintiffs assert that the United States' contacts with the dispute are substantial.[114]

Because they encompass products liability claims against Boeing, the actions have a connection to the United States. On balance, however, one cannot say that those connections are as significant as Taiwan's contacts with the claims. In this respect, the court's conclusion in *Nai–Chao, supra*—which were affirmed by the Ninth Circuit in *Cheng, supra*—are instructive:

> "Plaintiffs seek to establish a nexus with the United States by characterizing these actions as American products liability actions, stressing that the aircraft was designed and manufactured in this country and that the aircraft was inspected and maintained in accordance with the United States regulatory scheme. Plaintiffs suggest that, because Boeing aircraft are utilized. extensively in the United States, this country has a predominant interest in retaining this litigation in order to deter the production of defective aircraft in the future." The Supreme Court in *Reyno* [, however,] expressly rejected the position urged by plaintiffs here, indicating that the interest of the United States in deterring the production of defective products was not sufficient to justify retention of the litigation.... [P]laintiffs cannot, by characterizing their causes of action as product liability claims against American defendants, escape the fact that these claims arise in the context of a Taiwanese accident and that Taiwan has the predominant interest in this litigation." *Nai–Chao, supra*, 555 F.Supp. at 20.

As in *Nai–Chao*, plaintiffs cannot obscure the strength of the connection between their actions and Taiwan by characterizing the cases as products liability suits against Boeing. See *Riyadh Airport, supra*, 540 F.Supp. at 1152 (concluding that "the ... accident's contacts with the foreign forums appear overwhelming" given that "the airplane in question was owned and operated by SAA, a Saudi Arabian national corporation[;] the airplane was apparently maintained by SAA in Saudi Arabia since the date of its delivery from the United States[;] the wreckage, service records and maintenance records for the airplane are apparently all located in Saudi Arabia[;] when the accident occurred, the airplane was on an intra-Saudi Arabian flight[;] the Saudi Arabian Presidency of Civil Aviation conducted an official investigation of the accident[;] and finally, all the real parties in interest in this case (i.e., the relatives of the decedents in this accident) reside outside the United States"); see also *Lueck, supra*, 236 F.3d at 1147 ("One of the defendants is a citizen of the chosen forum: Honeywell, which manufactured the radio altimeter in issue. The citizens of Arizona certainly have an interest in the manufacturing of defective products by corporations located in their forum.... [However, the] interest in New Zealand regarding this suit is extremely high. The crash involved a New Zealand airline carrying New Zealand passengers. The accident and its aftermath, including the accident investigation, the post-investigation activity, and the various legal proceedings ... have all received significant attention by the local media"); *Jennings, supra*, 660 F.Supp. at 808 ("[a]lthough Pennsylvania and the United States may have a generalized interest in deterring their residents from manufacturing defective products, the English and Scottish governments have an intensely local interest in regulating the sale and operation of aircraft within their territory").

**114.** *Id.*

To the extent one considers California, rather than the United States, the relevant forum for comparison purposes, the imbalance is even greater. Only five of some fifty actions involve California resident plaintiffs. Boeing's business, moreover, is located in the state of Washington. See *Pain, supra,* 637 F.2d at 792 ("Perhaps the most striking feature of this case is the lack of any significant contacts between the event in dispute and the forum chosen by the plaintiffs in which to litigate the consequences of that event.... [V]irtually all significant contacts link this controversy with Norway, not Washington, D.C. Indeed this controversy has only two contacts with the United States: the residence of the decedent Kahn's mother in New Hampshire, and the helicopter's manufacture in Connecticut years ago. Since this controversy has no relation whatever to the forum chosen by the plaintiffs ... the district judge was entirely justified in dismissing the case. As the trial judge quite properly determined, jury duty for this matter ought not be imposed upon the people of the District of Columbia, nor should local dockets be clogged by appeals in this case").

Because Taiwan has significant contacts with the cases, and the crash is properly considered a "localized controversy" for its courts, the court concludes that this factor weighs heavily in favor of dismissal on *forum non* grounds.

### (iii) Burdening Citizens In This Forum With Jury Duty

While the parties address this factor only briefly,[115] it is clear that, given Taiwan's significant connection to the actions, and California's minimal one, requiring California citizens to serve as jurors in these cases would be an unfair burden. See *Gulf Oil, supra,* 330 U.S. at 508–09, 67

S.Ct. 839 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home"). Accordingly, this factor too weighs in favor of dismissal.

### (iv) Avoiding Unnecessary Conflicts of Law And Trying The Case In A Forum Familiar With The Applicable Law

"Before dismissing a case for *forum non conveniens,* a district court must first make a choice of law determination." *Contact Lumber, supra,* 918 F.2d at 1450. A determination that United States law applies is not dispositive, and does not bar *forum non conveniens* dismissal. See *Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1092 (9th Cir. 1998) ("the applicability of United States law to the various causes of action should ordinarily not be given conclusive or even substantive weight," citing *Contact Lumber, supra,* 918 F.2d at 1450). Conversely, a finding that foreign law applies does not mandate dismissal. See, e.g., *Riyadh Airport, supra,* 540 F.Supp. at 1153 ("Despite the possibility that foreign law may apply to these cases, the court does not consider the burden or applying foreign law to be very significant; [f]ederal courts are experienced in applying foreign law and should not be reluctant to do so" (internal quotation marks and citation omitted)).

The Ninth Circuit has held that a "choice of law analysis is only determinative when the case involves a United States statute requiring venue in the Unit-

---

115. See, e.g., Boeing Reply at 17 ("Taiwan clearly has the greatest interest in determin-

ing the amount of compensation its citizens receive").

ed States, such as the Jones Act or the Federal Employers' Liability Act." *Lueck, supra,* 236 F.3d at 1148. Here, both parties invoke the Death on the High Seas Act, 46 App. U.S.C. §§ 761 et seq. ("DOHSA"), as a statute that is potentially applicable to the actions. Mindful of the *Lueck* rule, plaintiffs argue that "like FELA and Jones Act claims, DOHSA claims cannot be dismissed on grounds of *forum non conveniens.*"[116] Plaintiffs fail to cite any authority to this effect, however, and a review of the relevant law indicates that DOHSA does not contain a mandatory venue provision that is similar to those found in the FELA and Jones Act. See *Creative Technology, Ltd. v. Aztech System Pte, Ltd.,* 61 F.3d 696, 699 (9th Cir.1995) (noting that the Jones Act and FELA contain "special provisions mandating venue in the United States district courts").

Section 688(a) of the Jones Act provides that "[j]urisdiction in [actions under the Jones Act] *shall be under the court of the district in which the defendant employer resides or in which his principal office is located.*" 46 App. U.S.C. § 688(a) (emphasis added). Similarly, the FELA provides that "an action may be brought in a district court of the United States, *in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business* at the time of commencing such action." 45 U.S.C. § 56 (emphasis added). In *Creative Technology,* the Ninth Circuit rejected plaintiff's argument that the Copyright Act precluded dismissal on *forum non conveniens* grounds because it vested United States district courts with exclusive jurisdiction over copyright claims. The court stated:

"The inapplicability of the *forum non conveniens* doctrine to the Jones Act and FELA is based on a privilege of venue, granted by the legislative body which created this right of action.... [T]he court must ascertain if there is anything about the specific federal statute which indicates that Congress implicitly spoke to, and rejected, the application of *forum non conveniens* doctrine to a suit thereunder....28 U.S.C. § 1338(a) is not the same type of mandatory venue provision found in either the Jones Act or FELA. That statute merely states that United States district courts shall have exclusive jurisdiction of United States copyright claims over state courts." *Creative Technology, supra,* 61 F.3d at 700.

Like the Copyright Act, DOHSA does not mandate venue in the United States district courts, nor specify that suit must be brought in a particular district. Section 761 of DOHSA provides that "whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued." 46 App. U.S.C. § 761. Section 764 provides that "[w]henever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding." 46 App.

116. Pls'. Opp. at 39.

U.S.C. § 764. These provisions do not mandate venue in any particular United States district court, nor do they evidence an intent on the part of Congress to preclude *forum non conveniens* dismissals. For this reason, numerous courts have dismissed DOHSA claims on *forum non conveniens* grounds. See *Pain, supra,* 637 F.2d 775; *Jennings, supra,* 660 F.Supp. 796; cf. *In re Air Crash Disaster Near Bombay, India On January 1, 1978,* 531 F.Supp. 1175, 1182 (W.D.Wash.1982) (declining to dismiss DOHSA claims on *forum non conveniens* grounds, but not because DOHSA precluded such dismissal). Accordingly, assuming *arguendo* that DOHSA applies to the pending actions, it does not prevent the court from ordering a *forum non conveniens* dismissal.

 Because the action does not "involve[ ] a United States statute requiring venue in the United States," the choice of law analysis is not determinative. *Lueck, supra,* 236 F.3d at 1148. Indeed, because "no such law is implicated, the choice of law determination is given much less deference on a *forum non conveniens* inquiry." *Id.* (citing *Lockman Founda-*

tion, *supra,* 930 F.2d at 771). Nonetheless, given the potential impact the application of Taiwan law could have on the convenience equation, however, the court nonetheless addresses the issue preliminarily.[117]

 Analyzing the choice of law question is somewhat difficult, as the parties do not agree on the body of law that supplies the relevant choice of law principles. Defendants contend that, in cases where DOHSA is applicable, the court should utilize admiralty choice of law principles to ascertain whether Taiwanese or American law applies.[118] At least one court in this circuit has adopted this approach. See *In re Air Crash Disaster Near Bombay, India, supra,* 531 F.Supp. at 1182 (concluding that DOHSA governed and using admiralty choice-of-law principles to determine which law applied); see also *In re Air Crash Disaster Near Palembang, Indonesia,* No. MDL 1276, 2000 WL 33593202, * 4 (W.D.Wash. Jan. 14, 2000) ("[a]ssuming Boeing is correct and DOHSA governs, the Court would then conduct a second layer of choice of law analysis").[119]

---

117. As the *Lueck* court noted, in cases that do not involved a United States statute that contains a mandatory venue provision, " 'no potentially dispositive choice of law determination need have been made.' " *Lueck, supra,* 236 F.3d at 1148 (citing *Lockman Foundation, supra,* 930 F.2d at 771.)

118. See Boeing Mot. at 22.

119. Boeing advocates such an approach because DOHSA references both domestic and foreign law. See 46 App. U.S.C. §§ 761, 764. It asserts that because either domestic or foreign law may be used to adjudicate a DOHSA claim, the court must conduct a choice of law analysis to determine which is applicable. (See Boeing Mot. at 22 ("DOHSA specifically *preserves* the applicability of *foreign* law as an exclusive alternative to DOHSA's liability and damages provisions in appropriate cases," citing 46 App. U.S.C. § 764)). Several courts, however, have concluded that DOHSA's for-

eign law provision operates only to authorize the use of foreign law if it is dictated by a choice of law analysis. They mandate that the choice-of-law determination *precede* any determination that DOHSA is applicable. See *In re Korean Air Lines Disaster,* 117 F.3d 1477, 1485 (D.C.Cir.1997) (stating that " § 764 made it certain that the substantive provisions of the Death on the High Seas Act were not to displace foreign law in those cases in which foreign law *already applied.* We therefore find no reason for concluding that § 764 requires the abandonment of normal choice-of-law principles.... Section 764 and foreign law play no role *once a court determines that U.S. law governs an action*" (emphasis added)); see also *In re Korean Air Lines Disaster of September 1, 1983,* 935 F.Supp. 10, 14, n. 2 (D.D.C.1996) ("while [§ 764] permits a cause of action based upon foreign law to be brought in admiralty in federal court, it only applies when foreign law

Plaintiffs do not address Boeing's contention that admiralty choice of law rules should be used. They contend that any choice of law determination is premature because "[t]he Court has not had the opportunity to decide the basis for its subject matter jurisdiction, which will be determinative of the choice of law principles.... [W]here jurisdiction is based on the existence of a federal question, federal common law applies even to the choice-of-law analysis. However, if federal jurisdiction is grounded upon diversity, then the forum state's choice of law rules will apply." [120] In other cases where the basis for jurisdiction has been difficult to ascertain, courts have utilized federal common law to conduct the choice of law analysis. See, e.g., *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir.1987) ("[i]n the absence of specific statutory guidance, we prefer to resort to the federal common law for a choice-of-law rule"); *Korean Air Lines, supra*, 935 F.Supp. at 12 (noting that "[j]urisdiction in these cases is premised on ...

applies pursuant to a choice of law analysis. In this case, it has been determined that United States law governs[;] therefore[,] the Court finds that [§ 764] is inapplicable and that only [§ 761] governs damages").

Even those courts that have held that choice of law analysis precedes the determination that DOHSA is applicable, moreover, do not uniformly utilize admiralty choice of law principles. Compare *Korean Air Lines Disaster, supra*, 935 F.Supp. at 13 (applying federal common law) with *Ioannides v. Marika Maritime Corp.*, 928 F.Supp. 374, 379 (S.D.N.Y.1996) ("the question [whether DOHSA] applies at all is determined under the principles of *Lauritzen* [*v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953),] ... and its progeny"). Because the choice of law analysis here is not determinative, and because the court analyzes the issue using both admiralty *and* federal common law principles, it need not decide whether the choice of law analysis precedes or follows a determination that DOHSA applies.

120. See Pls'. Opp. at 37, n. 26.

federal treaty, the Warsaw Convention, 28 U.S.C. § 1331, admiralty, 28 U.S.C. § 1333, and in part on diversity," and concluding that "a federal choice of law rule is necessary here").

Whether admiralty or federal common law choice of law rules apply, the result here is the same. In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court outlined seven factors relevant to an admiralty choice of law analysis: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of the foreign forum; and (7) the law of the forum.[121] In *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the court identified an eighth relevant factor—the shipowner's base of operations. Although plaintiffs present no argument regarding the *Lauritzen* factors,[122] a brief preliminary review

121. Although *Lauritzen* was a Jones Act case, its choice of law analysis is equally applicable in DOHSA and other maritime cases. See *Warn v. M/Y Maridome*, 169 F.3d 625, 629, n. 4 (9th Cir.1999) (citing with approval *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 900 (3d. Cir.1977), where the court applied *Lauritzen* to DOHSA claims); see also *Singh v. OMI Corp.*, No. 00 Civ. 156(JSR), 2001 WL 25701, *1 n. 2 (S.D.N.Y. Jan. 21, 2001) ("[w]hile *Lauritzen* concerned only the Jones Act, its choice-of-law principles have since been applied to DOHSA and general maritime law," citing *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 454 (2d Cir.1975)).

122. Cf. *Air Crash Disaster Near Palembang, supra*, 2000 WL 33593202 at *4 (declining to conduct a formal choice of law analysis because, as respects the *Lauritzen* factors, "Boeing addresses these factors only briefly, and the plaintiffs not at all," but concluding only that "[a] cursory consideration suggests that a majority of the factors favor application of the law of Indonesia or Singapore").

indicates that Taiwan law would likely govern the action if admiralty choice of law rules were used. The accident occurred in Taiwan's territorial waters; the "law of the flag" indicates that Taiwanese law should apply, as China Airlines is a Taiwanese carrier and Flight CI611 involved an aircraft registered in Taiwan; the vast majority of those killed in the accident were citizens and residents of Taiwan; China Airlines' allegiance and base of operations are located in Taiwan; the majority of the decedents purchased their tickets in Taiwan;[123] and Taiwan is an accessible forum.

Even if some of the *Lauritzen* factors implicated United States law, moreover, the fact that the law of the flag points to Taiwan is likely dispositive. See *Warn, supra*, 169 F.3d at 629 (noting that "the only factor we have considered potentially dispositive is the law of the flag"); *Bilyk v. Vessel Nair*, 754 F.2d 1541, 1545 (9th Cir. 1985) (" '*Lauritzen* itself firmly mandates that the law of the flag presumptively controls, unless other factors point decidedly in a different direction' "); *Pereira v. Utah Transport, Inc.*, 764 F.2d 686, 689 (9th Cir.1985) (the law of the flag is of cardinal importance and "should be accorded great weight in the choice of law analysis"); see also *In re Air Crash Disaster Near Bombay, supra*, 531 F.Supp. at 1189 (noting that "[t]he law of the flag, the law under which a vessel or aircraft operates, is in this case the law of India," because "Air India, the owner of the ill-fated aircraft, is India's flag carrier and is wholly owned and controlled by the government of India," and concluding that "the *Lauritzen*

analysis dictates the choice of Indian law in this case").

Similarly, if the analysis is conducted under federal common law, Taiwan law will likely apply. "The Restatement (Second) of Conflict of Laws ... is a source of general choice-of-law principles and an appropriate starting point for applying federal common law in this area." *Harris, supra*, 820 F.2d at 1003. The Restatement presumes that the law of the place where the injury occurred applies. *Id.* at 1003–04 (citing Restatement (Second) of Conflict of Laws, § 175 (1969)); see also *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 783 (9th Cir.1991). Here, the accident occurred in Taiwan territorial waters; accordingly, Taiwan law governs unless "California has a more significant relationship to the crash and to the parties." *Harris, supra*, 820 F.2d at 1004; see also *Schoenberg, supra*, 930 F.2d at 783 ("In this case, the injuries occurred in California, where the plane crashed. Under the Second Restatement approach, California law should apply unless Mexico has a more significant relationship ... to the occurrence and the parties" (internal citation and quotation marks omitted)). In evaluating whether this forum's relationship to the actions is more significant than that of Taiwan, the court must consider

"(a) the needs of the interstate and international systems[;] (b) the relevant policies of the forum[;] (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue[;] (d) the protection of justified ex-

---

**123.** At least one court has noted that, while the location of the employment contract factor has little relevance in actions regarding aircraft, it is analogous to the location where passengers purchase their airline tickets. See *Bombay, supra*, 531 F.Supp. at 1190 ("Although this factor has no literal application to air passenger transportation, an analogy can

be made to the place where the passengers purchased their airline tickets. Defendants maintain, and plaintiffs do not dispute, that all decedent passengers purchased their tickets in India. In this context, it is also noteworthy that the flight originated in India, was bound for Dubai and had no geographical nexus to the United States").

pectations[;] (e) the basic policies underlying the particular field of law[;] (f) certainty, predictability and uniformity of result[;] and (g) ease in the determination and application of the law to be applied." *Schoenberg, supra,* 930 F.2d at 783, citing Restatement at § 6(2). These factors support the application of Taiwanese law. Using Taiwanese law facilitates the workings of the international system because it appears that Taiwanese choice of law principles would result in the application of its law. See *Harris, supra,* 820 F.2d at 1004.[124] Moreover, as noted earlier, Taiwan has a significant interest in the actions, because the vast majority of the decedents and plaintiffs were and are citizens and domiciliaries of Taiwan. As respects the balance of the factors, applying the law of the state where the injury occurred "furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the injury occurred will usually be readily ascertainable, of ease in the determination and application of the applicable law." *Harris, supra,* 820 F.2d at 1004 (citing Restatement (Second) of Conflict of Laws,

§ 175, comment d). Whether the choice of law analysis is conducted under admiralty law or federal common law, therefore, it appears that Taiwanese law will likely apply.[125]

Because Taiwanese law is likely to apply to these actions, and because the court is unfamiliar with Taiwanese law, this public factor—while not determinative—weighs in favor of dismissal on *forum non conveniens* grounds. See *Lueck, supra,* 236 F.3d at 1148 n. 6 (noting that, while the district court was not required to conduct a choice of law analysis, "because New Zealand law is likely to apply in this suit, the choice of law determination weighs in favor of dismissal").

### (v) Other Relevant Public Interest Factors

Plaintiffs contend that the existence of two cases governed by Article 28 of the Warsaw Convention mandates denial of defendants' motion to dismiss. In *Hosaka, supra,* the Ninth Circuit held that "Article 28(1) of the Warsaw Convention precludes a federal court from dismissing an action on the ground of *forum non conveniens.*"

**124.** See Jan Decl., ¶ 11 (noting that under Taiwan Civil law, "the wrongful act shall be dealt with by *lex loci delicti* ").

**125.** Even if the court's jurisdiction was based on diversity of citizenship among plaintiffs and defendants, such that California law provided the relevant choice of law principles, the conclusion would remain the same. Under California's "government interest" test, the court "must first consider whether the two [forums]' laws actually differ; if so, [the court] must examine each [forum]'s interest in applying its law to determine whether there is a 'true conflict'; and if each [forum] has a legitimate interest [the court] must compare the impairment to each jurisdiction under the other's rule of law." *Arno v. Club Med Inc.,* 22 F.3d 1464, 1468 (9th Cir.1994) (citing *McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1422 (9th Cir.1989)). It is apparent here that United States and Taiwa-

nese law differ. A review of the connections of each forum to the action, however, indicates that Taiwan's interest in adjudicating the action far outweighs any interest the United States might have in doing so. See, e.g., *McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1425 (9th Cir.1989) ("[w]hatever the specific interests underlying the Saudi rule may be, it seems certain that Saudi Arabia has some legitimate interest in seeing that Saudi law determines the consequences of actions within its borders causing injury to people who reside there.... California, despite its interest in securing recovery for its residents, will not apply its law to conduct in other jurisdictions resulting in injury in those jurisdictions"). As a consequence, it is likely that the court's application of California choice of law rules would not dictate a result different from that which would be obtained by applying admiralty or federal common law choice of law principles.

*Hosaka, supra,* 305 F.3d at 1004. The court is thus obligated to adjudicate the Warsaw Convention cases that have been filed. Plaintiffs argue that this fact warrants denial of defendants' motion, so that "the substantial inconvenience [to all parties] of litigating in two different fora" can be avoided.[126]

Whether the Warsaw Convention cases will actually be litigated is speculative. China Airlines has agreed to waive the $75,000 liability limit established by the Convention,[127] and maintains that "[a]ll that remains to be done in these cases is to establish a quantum of compensatory damages." [128] While plaintiffs contend they may reject the proffered waiver,[129] this could prove problematic given the guaranteed compensation the Warsaw Convention plaintiffs would sacrifice as a result.[130] Plaintiffs also note that China Airlines' waiver does not affect the Warsaw Convention plaintiffs' right to proceed against Boeing. The possibility that two plaintiffs will pursue liability theories against Boeing in this court, however, does not mandate the retention of 119 additional cases. This is particularly true given that China Airlines' waiver of the liability limitation renders it liable for all damages that could be recovered against both defendants.[131] Compare *In re Air Crash at Taipei, Taiwan,* No. MDL 01–1394 GAF (RCx), 2004 WL 1234131, at *2 (C.D.Cal. Feb. 6, 2004)

(granting defendants' motion to dismiss thirteen of nineteen cases on *forum non conveniens* grounds, even though six Warsaw Convention cases remained, because Singapore Airlines had waived liability limits under the Convention, and "the likelihood that any of the Article 28 cases will proceed to trial against Boeing is remote . . . given the circumstances of this case"). The court finds, however, that the pendency of the Warsaw Convention cases, while not mandating retention of the actions in this forum, weighs slightly in favor of such a result.

### (vi) Conclusion Regarding Public Interest Factors

The court congestion factor is either neutral or weighs slightly in favor of trial of the cases in Taiwan. Similarly, the localization of the controversy, preliminary choice of law analysis, and the burden on potential jurors all weigh heavily in favor of Taiwan. The fact that two cases have been brought under Article 28 of the Warsaw Convention weighs slightly in favor of the current forum. On balance, therefore, the public interest factors strongly favor dismissal. See *Base Metal Trading SA, supra,* 253 F.Supp.2d at 712–13 (concluding that the public interest factors favored dismissal where "there would likely be extensive application of Russian law in this case. . . . Russia's interest in adjudicating

**126.** Pls'. Opp. at 11.

**127.** See Declaration of Frank A. Silane ("Silane Decl."), ¶ 4.

**128.** *Id.,* ¶ 5.

**129.** Pls'. Response at 11–12.

**130.** Boeing Reply at 24 (stating that "such a refusal would be highly questionable in light of the clear conflict of interest for the attorneys who represent both Warsaw and non-Warsaw plaintiffs. The Warsaw plaintiffs would hardly choose to risk losing the opportunity to obtain from China Airlines the full

value of their claims solely for the potential benefit of the non-Warsaw plaintiffs").

**131.** See *id.* (noting that "China Airlines' agreement to waive liability limits in the Warsaw cases already entitles the Warsaw plaintiffs to all damages that might possibly be obtained against both defendants"); see also Boeing Sur–Reply at 4 ("After obtaining 100% of their damages, these plaintiffs would not be entitled to any further damages, even if they somehow could prove their claims against Boeing").

this action is far greater than any interest the United States has in adjudicating this dispute [and it] would be unfair to require a New York jury to sit on this case [because] the local interest in resolution of the dispute is virtually none"); *Riyadh Airport, supra,* 540 F.Supp. at 1154 (stating that the public interest factors "clearly favor[ed] the use of a foreign forum" where "1) the burden factors favor the use of a foreign forum; 2) the interest in the dispute factor clearly favors the use of a foreign forum; and 3) the familiarity with the governing law factor is insignificant").

### (c) Conclusion As To Whether Exceptional Circumstances Justify Dismissal

Because the majority of private and public interest factors favor dismissal, defendants have made a clear showing that "trial in the chosen forum would be unnecessarily burdensome for the defendant[s][and] the court." *Piper, supra,* 454 U.S. at 255–56, n. 23, 102 S.Ct. 252. Specifically, they have demonstrated that "the private and public interest factors set out in *Gilbert* ... weigh so heavily in favor of the foreign forum that they overcome the presumption accorded plaintiffs' selection of forum.'" *Aguinda, supra,* 142 F.Supp.2d at 547.

### 3. Terms Of Dismissal

Because Taiwan is an adequate alternative forum and the balance of public and private interest factors weigh in favor of dismissal on *forum non conveniens* grounds, the court grants defendants' motion. It conditions the dismissal as follows:

1. Defendants may not contest liability for compensatory damages in any action refiled, at the respective plaintiffs' option, in either Taiwan or the respective decedent's domicile;

2. Defendants must submit to service of process and jurisdiction in the alternative forum in which the action is filed for all relevant purposes;

3. Defendants must waive any statute of limitations defense to any currently pending action that is refiled in the alternative forum within 180 days from the date of the order of dismissal;

4. Defendants must waive any applicable limitation on compensatory damages for those cases governed by Article 28 of the Warsaw Convention that will remain in this court;

5. Defendants must provide plaintiffs with access to all evidence and witnesses in their custody or control, whether located in the United States or elsewhere, that are relevant to liability and/or damages issues raised in subsequent actions filed by plaintiffs, and must additionally agree that all evidence obtained through discovery in these actions may be used in the foreign forums;

6. Defendants must bear the cost of translating English-language documents and witness testimony into Mandarin Chinese as necessary;

7. The dismissal is without prejudice to the refiling of actions in appropriate jurisdictions within 180 days of the date of the order of dismissal, provided, however, that (1) if the defendants fail to comply with any of the terms stated above or (2) if the courts of the jurisdiction in which the actions are refiled refuse or decline to accept jurisdiction, the actions may be reinstated in this court effective as of the date on which they were filed in or removed to this court.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss on forum *non conveniens* grounds is granted. Defendants

Boeing and China Airlines are directed to prepare and lodge a judgment consistent with the terms of this order on or before July 12, 2004.